[Civ. No. 3735. Fourth Dist. Feb. 15, 1949.]

BARRY PHILLIPS et al., Respondents, v. A. D. MATHEWS, Appellant.

Leonard M. Ginsburg and Adolph Feierbach for Appellant.

J. A. Chase and Leroy McCormick for Respondents.

GRIFFIN, J.—By their amended complaint plaintiffs seek recovery of $2,000 under a written purchase agreement signed by the parties, dated January 7, 1946, and properly pleaded. It recites that defendant Mathews, as seller, agrees to sell and deliver to plaintiffs, doing business as the Visalia Poultry Products Company, 1,000 turkeys between May 15 and May 30, 1946, and acknowledges receipt of $2,000 as "guarantee that he will be delivered and received as herein. . . . Said sum of $2,000 to be deducted from total purchase price at time of delivery." Then follows the allegation that said sum was paid, that plaintiffs have been ready and willing to perform on their part as provided in the contract upon delivery of the turkeys; that they demanded that defendant deliver the turkeys but that he refused. By way of answer he alleged that he was a farmer engaged in the business of growing turkeys; that plaintiffs were engaged in the business of buying and selling turkeys and turkey products; that about January 7, 1946, defendant and plaintiffs entered into an *oral* agreement whereby defendant agreed to keep his turkey hens alive during the turkey egg season for the purpose of producing turkey eggs, in consideration of the agreement of plaintiff company to purchase all turkey eggs so produced by defendant (except 10,000 eggs which defendant would keep for his own use and disposal); that plaintiffs agreed to pay for said eggs at market price and to advance $2,000 to defendant to apply toward the cost of producing the eggs and cost of keeping and caring for the hens; that defendant

agreed to deliver said breeder hens to plaintiffs at the end of the turkey-egg season, which was during the latter part of May, 1946, for marketing, and plaintiffs were to deduct the $2,000 advanced, from the purchase price of the hens; that thereafter only a portion of the agreement set forth in the amended complaint was reduced to writing; that defendant entered upon the performance of the oral and written agreement; that it was orally agreed that the market price for the turkey eggs would be 25 cents each; that on February 9, 1946, he delivered 1,000 eggs to plaintiff and was paid $250; on February 20, 1946, 1,200 additional eggs were delivered and he was paid $300; that on March 15, 1946, plaintiffs advised defendant that they were selling their plant in Visalia and would not accept any further delivery of eggs, and thereby they wholly repudiated and breached the oral agreement; that he was willing and able to deliver all turkey eggs produced and to be produced by him during said season and to perform the oral agreement up to the time plaintiff breached the oral agreement. Defendant alleges that the $2,000 was not paid under the terms of the written agreement but under the terms of the oral agreement.

In a counterclaim these facts are reiterated. It further alleges that the turkey hatching egg season lasted until May 15, 1946. In paragraph VI it is alleged that up to April 2, 1946, defendant produced 16,600 turkey eggs and retained 10,000 for his own disposal; that 2,200 were sold to plaintiff and 4,400 were sold elsewhere and defendant received therefor $340 and a worthless promissory note for $1,500. Paragraph VII alleges that defendant was forced to have a portion of the remaining eggs sold, hatched, and was forced to expend $240 in so doing. Paragraph VIII alleges that defendant was unable to sell any additional eggs, so, on April 2, 1946, he sold the breeder hens to someone other than plaintiff. Paragraph IX alleges that if defendant had retained the breeder hens until April 15, 1946, they would have produced approximately 38,901 eggs; that under the oral agreement plaintiffs were obligated to accept 28,901 thereof at $7,225.25; that the cost of feeding the hens from April 2 to May 15 would have been $1,075; that defendant has therefore been damaged in the sum of $3,500.25, after deducting the offsets mentioned. Judgment was sought in that amount. On these pleadings the case was set down for trial.

On June 9, 1947, plaintiffs moved to strike out paragraph IX of the cross-complaint on the grounds that it was irrelevant

and constituted no issuable fact or defense to plaintiffs' cause of action; that since the counterclaim admitted the receipt of $2,000 and nondelivery of the turkeys sold and since payment was made to defendant for all turkey eggs produced by defendant in an amount in excess of what plaintiffs agreed to pay for such eggs, no damages or offsets would be allowable against plaintiffs' claim. Thereafter defendant moved to amend paragraph VIII of the counterclaim by adding a paragraph alleging that defendant was unable to dispose of additional turkey eggs and so, on April 2, 1946, he sold the hens to avoid the expense of feeding them and for the purpose of minimizing the damages resulting from plaintiffs' repudiation of the oral agreement.

The trial court granted the motion to strike paragraph IX, denied defendant's motion to amend paragraph VIII of the counterclaim and denied plaintiffs' motion for judgment on the pleadings.

On November 4, respective counsel filed a stipulation that the alleged worthless $1,500 note mentioned in the counterclaim had been paid in full; that paragraph VI be amended accordingly and that the claim for damages on the counterclaim be reduced from $3,500.25 to $2,000.25; that the previous order made denying plaintiffs' motion for judgment on the pleadings be vacated and that plaintiffs may renew said motion. On November 5, the court so ordered and rendered judgment for plaintiffs on the pleadings in the sum of $2,000, plus interest and costs. Defendant appeals from the judgment.

There was no showing of an abuse of discretion by the denial of defendant's motion to amend paragraph VIII of the counterclaim as proposed. An application to amend by setting up a claimed defense not previously pleaded is addressed to the sound discretion of the trial court. (*Trower v. City and County of San Francisco*, 157 Cal. 762 [109 P. 617].)

Under the written contract, as pleaded, plaintiffs were entitled to the judgment as rendered. Defendant's answer admits its due execution, the receipt of the $2,000 and the guarantee that 1,000 turkeys would be sold and delivered to plaintiffs by defendant between May 15 and May 30.

Paragraph IX of the counterclaim, ordered stricken on motion, was, when considered with the other allegations of the counterclaim, but an obvious attempt on the part of the pleader, to admit the due execution of the written agreement,

but by way of avoidance, claim that there was some contemporaneous or subsequent oral agreement modifying and changing the mandatory terms of the written agreement as to the purpose for which the $2,000 was paid, and as to the requirement that defendant must sell to plaintiffs the 1,000 turkeys contracted for under the written agreement between May 15 and May 30. Defendant does not allege that plaintiffs ever refused to accept the turkeys. On April 2, 1946, they were sold to another, apparently at the prevailing market price, and no loss in this connection could be claimed. Defendant, therefore, was left without the means of making delivery of the turkeys between the dates mentioned in the written agreement. ■ It is a general principle of law that extrinsic evidence is not admissible to show that a contract was partly written and partly oral if the matter proposed to be made part of the contract by such evidence is inconsistent with the terms of the writing. ■ Since the written agreement is certain in its terms in respect to the provisions above mentioned, the oral agreement alleged cannot, in the absence of a proper showing, be deemed a contract modifying or varying the written agreement within the meaning of section 1698 of the Civil Code. (*Peterson* v. *Chaix*, 5 Cal.App. 525 [90 P. 948] ; *Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal. App. 746 [103 P. 938] ; Civ. Code, §§ 1625, 1698, Code Civ. Proc., § 1856 ; 6 Cal.Jur. § 166, p. 261.)

■ Defendant argues that he was burdened under his claimed oral agreement with a ''legal duty'' to sell his turkeys on April 2d, as there was no market for turkey eggs as of that date; that since plaintiffs breached their oral contract to purchase eggs, as a reasonable step to minimizing the damage caused, he was thus legally obligated to sell to save a wasteful expenditure of $1,075, in caring for the turkeys until May 15, when they could be sold to plaintiffs. The main difficulty with this argument is that it was defendant's ''legal duty'' to comply with his written agreement to sell his turkeys to plaintiffs at the time agreed upon. If he chose to pursue another course it could not be described as the primary or predominating legal duty. (*Nye & Nisson* v. *Weed Lumber Co.*, 92 Cal.App. 598 [268 P. 659].) He contends that this ''legal duty'' to sell distinguishes the case of *O'Hare* v. *Peacock Dairies, Inc.*, 26 Cal.App.2d 345 [79 P.2d 433], relied upon by plaintiffs. That case involved an agreement entered into between plaintiffs and defendant whereby

plaintiffs were to sell and defendant was to purchase all milk produced upon plaintiffs' dairy ranches for a period of 10 years. On June 22, 1933, defendant breached the agreement by notifying plaintiffs that it would accept no further deliveries of milk from them. Plaintiffs continued to operate the dairy and sell milk to others until December 1, 1935, at which time they disposed of their dairy and discontinued production. This court determined that the plaintiffs were not entitled to recover damages for prospective profits from December 1, 1935, the date the dairy herd was sold, to March 26, 1939, the termination date of the contract, since the sale of the herd put it out of the power of plaintiffs to perform. It was there stated (p. 362):

"Apparently they [plaintiffs] preferred to receive the income from the money rather than to rely on a prospective profit from the cows. They could no longer perform under their contract as they produced no milk for sale. Their prospective damage could not be fixed with any degree of exactness because they had by the sale of their cows removed the only possible basis upon which future damages could be computed."

It is, in connection with claimed future damage, alleged in paragraph IX that this statement becomes important in the instant case, i. e., if defendant had retained the turkeys until May 15th they would have laid 38,901 eggs and plaintiffs would have been obligated to take 28,901 of that number at 25 cents apiece, totaling $7,225.25, less the cost of production fixed at $1,075, leaving $6,150.25 claimed future damages by virtue of the breach of the oral agreement. The O'Hare case cites the general rule that where a buyer breaches such a contract the seller, not being at fault, may recover damages in such an amount as would compensate him for all the detriment caused by the breach; that the seller need not keep himself in a position to perform after the breach; that prospective losses to the end of the term of the contract may be compensated in damages. But the rule is subject to the exception that the prospective damages must be capable of sufficient accurate computation so as not to violate the rule against uncertain and speculative damages. In this connection it is there stated:

"In all the cases to which we have been cited in which the rule has been applied that the seller need not keep himself in a position to perform, the seller *retained ownership of the means of manufacture or production*. In the instant case we

have the unusual situation of the sellers disposing of the means of production and changing the form of their capital investment by reducing it to cash. They not only put themselves in a position where they were not able to perform but received the immediate benefit of the use of their entire capital investment.'' (Italics ours.)

Therefore, if we eliminate the element of claimed future damages, after the sale of the turkeys, as set forth in paragraph IX, it does not appear that defendant was otherwise damaged. The turkey eggs sold and delivered to plaintiffs were paid for at the rate of 25 cents each. Ten thousand eggs were allowed to be retained for his own use. The 4,400 eggs sold to others brought $340 in cash plus the $1,500 note, now paid, after deducting $240, claimed expenses in hatching, netting $1,600. According to these figures, contained in defendant's counterclaim, he gained $500 by selling to others. The order for return of the $2,000 to plaintiffs, which sum was improperly retained by defendant, was within the province of the trial court to make under the pleadings before it.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.