[Civ. No. 15618.   First Dist., Div. One.   Feb. 10, 1954.]

EDWARD KEEBLE, Respondent, v. F. H. BROWN et al., Appellants.

Bohnett, Hill, Cottrell & Bohnett and C. C. Cottrell for Appellants.

Rankin, Oneal, Luckhardt, Center & Hall and Marshall S. Hall for Respondent.

BRAY, J.—In an action to foreclose a chattel mortgage defendants appeal from a judgment in favor of plaintiff.

## QUESTIONS PRESENTED

1. Alleged abuse of discretion in permitting amendment of complaint.

2. Was there an *executed* oral agreement?

3. Should the court have found on depreciation?

## FACTS

This controversy grew out of a partnership contract between the plaintiff and defendant F. H. Brown* executed in 1945. Defendant was a supervisor and estimator who had been employed by numerous large contractors. Plaintiff was a paving and excavating contractor who owned a large

---

*Unless otherwise appearing, ''defendant'' will refer to F. H. Brown.

quantity of equipment. Under the agreement defendant was to bid on and supervise jobs to be undertaken by the partnership. Plaintiff was to make his equipment available on a rental basis. The profits were to be split equally. From modest beginnings the business greatly increased and ultimately exceeded $2,000,000. Defendant was in control of all jobs. Various pieces of equipment were purchased on plaintiff's credit, but half was to belong to defendant on his payment of half the cost.

In 1947 it was deemed advisable to obtain a quarry to provide material for a number of jobs on contract at that time. This investment did not turn out as well as hoped. These difficulties, among others, prompted plaintiff to take steps to terminate the contract as provided therein. In 1949 and until plaintiff in 1950 gave defendant notice to terminate the contract, efforts were being made to wind up the venture. The chief problem was to make an equal division of the equipment and other property which had been accumulated and belonged jointly to the parties. The problem was complicated by the fact that the exact amount due plaintiff could not be determined at that time. The problem was solved by an "agreement and promissory note" wherein defendant, with his wife, defendant Dorothea Brown, joining, promised to pay a minimum of $30,000 and to cooperate with plaintiff in obtaining a complete accounting to determine the additional amount due plaintiff, which amount defendants agreed to pay. The note was secured by a chattel mortgage on the equipment left after a division between the parties of other equipment.

An audit was made of the books. Plaintiff's accountant determined that the sum owing plaintiff in excess of the $30,000 provided in the note was $45,755. Defendant then prepared a statement showing the sum to be some $20,000. The difference in these figures and the cause of the controversy lies in the manner in which the particular party allocates the loss or profit on the many jobs performed. This will be discussed later.

1. *Amendment to Complaint.*

When the trial commenced plaintiff's complaint* pleaded the original partnership contract, the "agreement and promissory note" and the chattel mortgage in full. On the second day of the trial plaintiff, over defendants' strenu-

---

*"Complaint" herein refers to the first amended complaint.

ous objections, was permitted to file an amended complaint to conform to proof, alleging the claimed executed oral agreement hereafter discussed. Defendants were given a four-day continuance to amend their answer and to prepare to meet the issue. They did amend their answer and the trial proceeded. Defendants contended that the court abused its discretion in allowing the amendment in that it completely changed the cause of action from one on a written contract to one on an oral contract. We can see no abuse of discretion.

An executed oral modification of a term or provision of a contract does not wholly extinguish the contract nor does it constitute the substitution of a new cause of action for the cause of action on the contract. (See 12 Am.Jur. § 427, p. 1004.) The trial court has a wide discretion in the granting of amendments to pleadings. ''Great liberality is allowed with respect to amendments at the trial if the defendant is not prejudiced thereby and the ends of justice will be subserved provided the issues to be decided are not wholly changed.'' (*Genger* v. *Albers,* 90 Cal.App.2d 52, 55 [202 P.2d 569] ; see, also, *Phillips* v. *Mathews,* 90 Cal.App.2d 161 [202 P.2d 798].) Defendants were not prejudiced by the amendment. In his opening statement plaintiff stated that he expected to prove the claimed executed oral statement, and the amendment was made to conform to the proof on that issue. The court continued the case for four days to give defendants an opportunity to meet the issue. No request was made for additional time. If there was a variance between the original complaint and the amendment it was not a material one, nor were defendants misled by it. ''A variance to be fatal must have misled or served to mislead the adverse party.'' (*Genger* v. *Albers, supra,* 90 Cal.App.2d at p. 55.) In that case an amendment to conform to the proof was permitted at the conclusion of the trial changing the cause of action from one in claim and delivery to one in conversion. *Dressler* v. *Johnston,* 131 Cal.App. 690 [21 P.2d 969], cited by defendants as ''not exactly in point with the situation here,'' is just that. There, in an action on a contract defendant obtained a verdict, the judgment on which was reversed on appeal. At the second trial defendant moved to amend the answer to conform to the evidence at the first trial. The amendment embodied a new and different theory from the one considered at the first trial. The reviewing court stated (p. 695) : ''After a judgment has been reversed on

appeal, without qualification, a motion to amend a pleading to conform to the evidence which was adduced at the original trial, does not lie." Also, " 'A commonly recognized limitation upon the propriety of amendments to conform to the proof is that they must not introduce a new cause of action or substantially change the claim . . .' " ■ The amendment in our case did neither. (See *Wilson* v. *Sharp*, *(Cal.App.) 260 P.2d 623, for test of what constitutes a wholly different cause of action.)

### 2. *The Oral Agreement.*

■ The basic dispute between the parties is the method of computing the profits and losses of their operations. Defendants contend that by the terms of the written contract these were to be determined on a job by job basis. Plaintiff contends, first, that the contract is ambiguous on this subject and therefore parol evidence was admissible to prove what was intended, and secondly, that if the agreement so provided, the parties by an executed oral agreement agreed that the profits and losses were to be computed on an over-all basis. The difference in method is important primarily because it is the rentals claimed by plaintiff for equipment owned by him alone and used on the jobs, which cause the chief difference in the figures of the parties.

The agreement provided in the event "the job or project shall result in a loss . . . in the computation of such loss, no charge shall be made to the cost of such job for rental or use of" plaintiff's equipment. Defendants contend that this clause is not ambiguous although at the opening of the trial defendants' counsel stated "some of those things, apparently, were not clearly thought through in the preparation of this contract . . ." Plaintiff contends that this constitutes an admission that the contract is ambiguous, binding defendants under the rule of *Coonan* v. *Loewenthal*, 129 Cal. 197 [61 P. 940]. As we believe that the evidence supports the court's finding of an executed oral contract we do not deem it necessary to discuss this point further.

While the evidence is conflicting we are required to follow that which, with the reasonable inferences therefrom, supports the court's finding. The parties started out on a job by job accounting basis, but before very long, due to their expanding operations, such method became impracticable. Plaintiff's office manager and accountant testified that statements pre-

---

*A hearing was granted by the Supreme Court on October 29, 1953.

pared by defendant or his office force contained charges allocated to particular jobs without consideration as to whether those charges were fully chargeable to the particular job. Thus, defendant's office expense was charged entirely to one job. Tire expense was charged and income credited indiscriminately to jobs. After this situation was called to plaintiff's attention he spoke to defendant about it and defendant stated that they had outgrown their agreement, that they would have to figure their profit and loss on an over-all basis, and if on such basis there was a loss, plaintiff would have to "discount" his rental. Plaintiff agreed to this method, and the accounts were kept in that manner.

Apparently most of the contract jobs made money. The operation of the quarry, however, lost considerable money, which fact was apparent by 1949. Plaintiff told defendant that if he was not to receive rental for his equipment, he would take two of his tractors off the quarry and use them in his personal business. Defendant could then hire tractors which would be paid for jointly, but plaintiff would be getting rental for his tractors. Defendant then told him that they were figuring their operations on an over-all basis, so plaintiff left the tractors. While defendant denied that there was ever any over-all agreement at any time, it is interesting that he admitted discussing with plaintiff at the quarry the matter of rental charge for plaintiff's equipment. Plaintiff wanted to know if defendant was going to invoke the rental clause on him. Defendant contends he answered by saying he did not know yet what he was going to do. Three other changes in the contract were made by oral agreement, defendant's weekly salary was increased to $100, his office overhead was charged as job costs, and defendant's name was used with plaintiff's in bidding on contracts. For approximately four and a half years the over-all method of accounting was used; the financial statements prepared by defendant were on that basis excepting one prepared January 25, 1950. Even though there is evidence to the contrary, the evidence amply shows that when the venture was first started it was not anticipated that at any one time there would be the number of jobs on hand which subsequently developed; the business grew so large that it was impracticable to account on a per job basis; the accounts were soon kept on an over-all basis; the parties agreed that they should be so kept and that the method of accounting was an executed thing. As the court found,—the oral agree-

ment provided that accounting between the parties and the determination of profit or loss should not be computed on an individual job basis but rather on an over-all basis covering their total joint operations, which "oral understanding continued and was confirmed by their acts and conduct throughout and to the date of the dissolution . . ." ██ Whether a writing has been modified by an executed oral agreement is a question of fact. (*Eastwood* v. *Golden State Produce Co.*, 113 Cal.App. 581, 583 [298 P. 838].) ██ Because in *D. L. Godbey & Sons Const. Co.* v. *Deane*, 39 Cal.2d 429 [246 P.2d 946], the oral agreement to modify a term of the written contract as to computations was entered into before the work actually started, defendant construes that decision as holding that an oral agreement entered into after the work is started cannot constitute the oral agreement which section 1698 of the Civil Code states may, if executed, alter a written agreement. There is nothing in the case to support such construction, nor is it the law.

### 3. *Depreciation.*

██ Large equipment which was purchased and which under the contract was to be the joint property of the parties, was purchased in plaintiff's name. The partnership in the partnership income tax reports took no depreciation upon that equipment; plaintiff did in his personal income tax reports. Defendant testified that he discussed this situation with plaintiff and that plaintiff told him that this would be adjusted between them. Plaintiff did not deny so stating. Defendant's counsel asked defendant if he ever received any depreciation credit on this equipment. Plaintiff objected. Considerable discussion followed between counsel ending with a statement by defendant's counsel to the effect that the court would have to rule on the value of this adjustment to be credited defendant on the indebtedness due plaintiff. The court then overruled plaintiff's objection and the witness answered that he did not receive such credit. Unfortunately the matter ended there. Plaintiff contends that the parties treated this equipment as plaintiff's until such time as the accounting might be had and therefore that plaintiff was entitled to have the depreciation. This, of course, is directly contrary to the conversation related by defendant and not denied by plaintiff. Defendant contends that the trial court should have made a finding on this subject although there is no record of a request therefor. Plaintiff points out, however, that there

is no evidence upon which the court could have found the amount of the depreciation taken by plaintiff. Had the depreciation been taken by the partnership, defendant would have received the benefit of his share thereof.

As the evidence now stands, it would appear that in all fairness defendants should receive credit on their indebtedness to plaintiff for their share of that depreciation. Where there is a fiduciary relationship (and there is one here) and the facts are peculiarly within the knowledge of one of the parties (the amount of this depreciation is known only to plaintiff) an accounting lies. ██ Having once taken jurisdiction, the court will grant further relief demanded by the situation and necessary to complete justice. (*Smith* v. *Blodget,* 187 Cal. 235 [201 P. 584]; citing 2 Pomeroy's Equity Jur. § 910, and 4 Pomeroy's Equity Jur. § 1421.) ██ That the issue of whether defendants are entitled to this depreciation was before the court is shown by the approximately eight pages of transcript covering the argument concerning its admissibility and by the fact that the court permitted defendant to testify to his conversation with plaintiff concerning it, which conversation was not denied. During that argument defendant's counsel stated: "It does come down to a direct issue before the Court to rule as to whether or not we can show, and we will make the offer to do it, of the value of the depreciation or this adjustment that was to come to Mr. Brown in this $35,000 settlement, and also in the total depreciation that was taken. I think the Court's going to have to rule that we're either in or out on that." The court at no time ruled on the issue stated by defendants, although it did rule on the admissibility of the question objected to, namely, had defendant received any depreciation credit on the equipment jointly owned with plaintiff. In *Jakobsen* v. *Peratis,* 213 Cal. 671 [3 P.2d 305], the court said concerning matter which was not answered other than by the contention that it was being raised for the first time on appeal (p. 672) : "But they appear from the uncontradicted facts, and there is no necessity that an argument on the law be first made in the trial court."

In order that equity may be done, it would seem fair to refer to the trial court the determination whether defendants are entitled to a credit for any portion of the depreciation taken by plaintiff alone on the joint property, and, if so, what amount should be credited.

If the court determines that defendants are entitled to

this credit, one other matter should be taken into consideration. Plaintiff testified that defendant agreed to pay his share of the interest which plaintiff would be required to pay upon the purchase price of the equipment purchased by plaintiff. The court should also determine whether there was such agreement and if, as appears, plaintiff has not received such reimbursement, plaintiff should be credited therewith.

Defendant complains of a ruling of the trial court in sustaining an objection to a question asked the expert who prepared Exhibit 17 as to whether he had made any attempt to allocate rentals of plaintiff's equipment. While the question should have been allowed, the error was not prejudicial as the exhibit speaks for itself on the subject.

The judgment is reversed and the cause is remanded for the sole purpose of determining the depreciation and interest issues as hereinbefore stated. In all other respects the judgment is affirmed. Respondent shall recover costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 12, 1954.