[Civ. No. 24244. Second Dist., Div. Two. May 5, 1960.]

CITY OF SAN MARINO et al., Plaintiffs and Appellants, v. THE ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES (a Corporation Sole) et al., Defendants and Appellants.

[Civ. No. 23660. Second Dist., Div. Two. May 5, 1960.]

THE PEOPLE ex rel. CITY OF SAN MARINO et al., Respondents, v. THE ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES (a Corporation Sole) et al., Appellants.

658

Charles R. Martin, City Attorney (San Marino), and Dunlap, Holmes, Ross & Woodson for Plaintiffs and Appellants in Civ. No. 24244 and for Respondents in Civ. No. 23660.

C. M. Castruccio, Paul P. Selvin, Nimmer & Selvin for Defendants and Appellants in Civ. No. 24244 and for Appellants in Civ. No. 23660.

FOX, P. J.—These two cases have been consolidated for hearing on appeal. The controversy, broadly speaking, centers around the uses defendants desire to make of their property located in the city of San Marino. One of these actions was brought by the city for declaratory relief. In that action defendants filed a cross-complaint for a writ of mandate. Both sides have appealed from different portions of the judgment. In the other suit, the city sought and obtained an injunction. Defendants have appealed.

The first action (No. 24244) was instituted on September 13, 1956, by the city, seeking a construction of its off-street parking ordinance and a declaration of rights under certain building permits which had been issued to defendants. Defendants filed a cross-complaint and petition in this action by which they sought a writ of mandate to compel the granting of a zoning variance and the reissuance of the building permits mentioned above. A supplemental complaint was filed on December 20, 1957, by the city alleging that an ordinance passed since the filing of the original complaint had made the controversy regarding the building permits moot. Judgment was entered on June 19, 1959, ordering reinstatement of the building permits as prayed for in the cross-complaint. The city has appealed from this portion of the judgment. The judgment also denied defendants' petition for a writ of mandate to compel the issuance of a zoning variance, and from that portion of the judgment defendants appeal.

The injunction suit was brought by the city on May 3, 1957, to abate an alleged nuisance. Judgment on the pleadings was entered September 4, 1958, in favor of the city. Defendants have appealed.

In order to understand the location of the various parcels of property which are here involved, a perusal of the tract map reproduced* herein is recommended. There are two omissions from the map as reproduced: (1) A nuns' residence

---

*See map on following page.

situated on the north one-half of Parcel 4; and (2) the "Old Adobe" rectory situated on Parcels 1 and 2 north of the Church building and the school. Parcels 1, 2 and 3 are zoned C-1, and Parcel 4 is zoned R-1. The southern portion of Parcel

4 (below the horizontal line) is the property for which defendants seek a variance and will be hereinafter referred to as the "variance lot." This lot has no structures on it and is unpaved. Parcels 1, 2 and 3 will hereinafter be referred to as the "C-1 property."

The pertinent facts as found by the court in the first case and as pleaded by defendants in the injunction suit (which we must accept as true since judgment was rendered on the pleadings) are as follows: Defendants purchased the C-1 property totaling 2 acres in 1939. The variance lot was acquired in 1947, and the northern portion of Parcel 4 (nuns' residence) in 1954. In 1948, defendants built a new church as indicated on the map, and in 1950 they built the school. The variance lot has been used since its acquisition in 1947 as a parking lot on Sundays and Holy Days of Obligation, and has been used since 1950 as a playground for the children attending the school. There has been no attempt to conceal these activities. Defendants' monetary investment in the entire property exceeds $300,000. The membership of the church has grown from 150 in 1939, to approximately 3,000 at the time of these actions. The school attendance has increased from 200 to 450. Without the use of the variance lot for the purposes of parking and recreation, there is insufficient space for these activities.

The background and chronology of the suits here involved are as follows: Soon after acquisition of the northern portion of Parcel 4 in 1954, defendants developed plans to improve their property by the construction of a new rectory on the C-1 property. Pursuant to this expansion program, on March 2, 1956, defendants applied for a zoning variance for the variance lot to allow its use as a parking lot and for recreational purposes. The city planning commission denied the application and the defendants appealed to the city council. After a hearing on July 11, 1956, the council sustained the ruling of the commission. Prior to the application for the variance, defendants had applied for a building permit for their proposed rectory. While this application was pending a conference was held between the city officials and representatives of the church, and a memorandum was prepared and signed by the parties embodying the results of said conference and stating the conditions upon which a permit for the rectory would be issued, one of which was that defendants dedicate a portion of their property as a parking

area. In compliance with this requirement, defendants dedicated a major portion of Parcel 3, labeled "Parking Lot" (see map), as a parking area. This dedication was by way of deed which limited in perpetuity the use of the dedicated area to off-street parking. The deed, which was filed by the city on August 9, 1956, recites that it is given in consideration of the issuance to the defendants by the city of a building permit for the construction of the rectory. Such dedication is required by an ordinance of the city and was made on a form provided by the city. Prior to the issuance of any permits, defendants let a building contract for the rectory. On August 10, 1956, the city issued two building permits to defendants. Permit Number 10495 was for the construction of a 5-foot high concrete block wall to separate Parcels 3 and 4 in accordance with the city's Ordinance 521 which requires a solid wall separating any parking lot from adjacent R-1 property (all of Parcel 4 is R-1). Permit Number 10496 was for the construction of the rectory building on Parcel 1 of the C-1 property. This permit contains the following condition: "Parish Rectory—Final inspection & permit to *occupy* this building is withheld until the wall permit No. 10495 is satisfactorily completed and accepted by the building inspector." (Emphasis added.) Following the issuance of these permits, and following the denial of the variance on the variance lot, a second conference was held between representatives of the parties. As a result of this conference, the building inspector determined that defendants did not intend to construct the required separation wall on the boundary between Parcels 3 and 4 and, therefore, the building inspector purportedly revoked the rectory permit (No. 10496) pending completion of the wall on or before October 1, 1956. The notice of revocation was in the form of a letter dated September 10, 1956, and the revocation was made without notice or hearing. The letter provided, *inter alia,* that ". . . until such wall is completed in full, your permit to construct a rectory will stand revoked, in a suspense file, to be reinstated only upon the order of the Building Inspector."

On September 13, 1956, the city filed the action for declaratory relief. The complaint alleged that the city had interpreted its off-street parking ordinance (San Marino Zoning Ordinance, art. IX) to require that defendants construct the entire parking lot including the wall before a permit for the

rectory could be issued. The defendants were alleged to have contended that completion of the parking lot and wall is not a condition precedent to the issuance of the rectory permit and the issue for determination was thus presented. The city added a new cause of action by way of supplemental complaint on December 20, 1957, in which it was alleged that on November 20, 1957, the city council adopted ordinance Number 601 amending the provisions of the zoning ordinance defining C-1 uses and reading in part: "No residential or other use permitted in an R-1 Zone, and no dwelling house, dwelling unit, living quarters, or housekeeping use shall be permitted in any C-1 Zone except upon a variance granted pursuant to Sections 23.31 et seq. of this Chapter." The city further alleged that the adoption of this ordinance made the permit controversy moot.

On January 4, 1957, defendants filed a cross-complaint and petition for writ of mandate. They alleged that an agreement was entered into between the parties on January 24, 1956, whereby the city agreed to issue permits for the rectory and auditorium and for the parking lot on the performance by defendants of certain prerequisites. It was further alleged that defendants had fully complied with all the conditions, including an application for a variance on the variance lot, and in reliance upon the agreement, had contracted with a construction firm for the construction of the rectory and auditorium. Defendants prayed for the issuance of a writ of mandate to compel the approval of the requested variance on the variance lot and for the reinstatement of the revoked building permit. The city made answer and return on February 5, 1957, and on May 13, 1957, a hearing was had on the limited question of the issuance of a writ of mandamus to compel the variance. An interlocutory decision was filed May 22, 1957, denying the writ.

Defendants' second amended answer to the complaint and supplemental complaint, filed July 25, 1958, alleged: (1) the recordation of the dedication deed; (2) the conditions for occupancy of the rectory as stated in the rectory permit; (3) that the revocation of the rectory permit was based upon a purported "anticipatory breach" by defendants of the parking lot wall requirement, and denied that there was any actual controversy regarding the interpretation of any statute or ordinance. The answer also alleged that the revocation of the rectory permit was unreasonable, unlawful, discriminatory

and arbitrary and that the newly adopted Ordinance Number 601 has no retroactive effect, as against defendants.

A final hearing on this action was held on November 24, 1958, and judgment was entered June 19, 1959. The judgment ordered reinstatement of Permit Number 10496 (rectory) and prohibited use of the building until completion of the wall as provided in Permit Number 10495. The judgment also denied defendants' petition for issuance of a writ of mandate directing the granting of the variance, thus confirming the action of the council.

The city appeals from that portion of the judgment which commands it to reinstate the building permit for the rectory (Permit No. 10496). As to this part of the judgment, the trial court found: "That prior to the issuance of said permits petitioners had (a) dedicated a portion of their C-1 property for off-street parking as required by Article IX, Section 23 of City's Municipal Code; (b) prepared and submitted plans and specifications for the rectory and parking area as required by said Code, and (c) had let a contract for the construction of said rectory. Said dedicated area was put to use for off-street parking at the time of said dedication and such use has continued to date of trial." The court further found: "That permit No. 10496 was revoked without notice to petitioners and without any hearing on said revocation being held by City, that said revocation was arbitrary and unlawful"; and "That neither said permits nor Article IX of Chapter 23 of San Marino Municipal Code provide the time within which they are to be exercised except that permit No. 10496 provides that 'parish rectory—final inspection and permission to occupy this building is withheld until the wall permit No. 10495 is satisfactorily completed and accepted by the building inspector.'" The court also found: "That Ordinance No. 601 of City referred to in respondents' supplemental complaint does not act retroactively and by reason thereof does not affect any rights that had accrued to petitioner under permit No. 10496."

The city first argues that the lower court committed error in ordering reinstatement of the permit because the original rectory permit was improperly and prematurely issued. In this connection, the city contends that no valid permit for the construction of a new building on C-1 zoned property may be issued until a proper parking area adjacent to the proposed building site has been constructed and approved.

The city arrives at this conclusion by a construction of its zoning ordinance, and it now asks this court to adopt the same construction. Under the city's interpretation of the ordinance, the rectory permit was not validly issued by the building inspector since it was issued at the same time as the permit to build the parking lot wall. However, the provisions of the ordinance in question (art. IX entitled ''Off-Street Parking'') do not sustain the city's position. Section 23.46 thereof provides in part: ''. . . no new building shall be constructed in the C-1 Zone . . . unless the *plans and specifications* therefor contain provisions for the parking of vehicles in accordance with the minimum requirements of this article.'' (Emphasis added.) The ''minimum requirements'' referred to above are set out in section 23.47 and the only requirement here pertinent is the 5-foot wall provision discussed *supra*. Section 23.48 provides for the required permit and reads in part: ''Any person desiring or proposing to construct a new building in the C-1 Commercial Zone . . . shall apply to the city building inspector for a permit. They shall file with the inspector plans and specifications for the new building . . . and shall furnish evidence satisfactory to the inspector not only that the applicant owns or otherwise has available *sufficient property* to provide the minimum off-street parking required by this article, but also that such property has been *adequately restricted* for the parking of automobiles by a recorded deed, lease or agreement which shall be irrevocable until the building for which such parking area is an adjunct has been removed.'' (Emphasis added.) The clear mandate of this ordinance is the requirement that an area for off-street parking be allocated as an adjunct to new buildings on C-1 zone property. The only condition attached to the issuance of a building permit for the building to be constructed is that plans and specifications for a parking lot be submitted which will comply with the requirements of sections 23.47 and 23.48 of the ordinance, including a suitable amount of space and proper restrictions on the use of that space. The ordinance does not require, in express terms or by implication, that the parking area must be constructed and approved before the issuance of the permit for the construction of the new building. The building inspector therefore acted within his authority in issuing the rectory permit to defendants and such issuance was in every way valid and binding upon the city.

We come next to the question: Was the permit validly re-

voked by the city? ▉ As stated in *Trans-Oceanic Oil Corp.* v. *Santa Barbara,* 85 Cal.App.2d 776, at page 783 [194 P.2d 148] : "It is not, nor could it be, claimed that a city council exercises unlimited discretion in the matter of revoking permits. A permit having issued, the power of a municipality to revoke it is limited. If the permittee does nothing beyond obtaining the permit or fails to comply with reasonable terms or conditions expressed in the permit granted, the proper authorities may revoke it. (Citing cases.)" But this is not to say that such revocation can be made without notice, hearing or the taking of evidence. ▉ The court made this point unmistakably clear when it said, at page 795 : "A permit may not be revoked arbitrarily 'without cause.' (Citation.) It is conceded that in revoking the permit granted to appellant, the City Council of Santa Barbara did so without prior notice to appellant, without a hearing, and without evidence. ▉ In determining that a permit, *validly issued,* should be revoked, the governing body of a municipality acts in a quasi-judicial capacity. In revoking a permit lawfully granted, due process requires that it act *only upon notice to the permittee, upon a hearing, and upon evidence substantially supporting a finding of revocation."* (Emphasis added.) With respect to the attempted revocation of the permit in the Trans-Oceanic case, the court held, at page 797 : "The resolution or revocation . . . adopted without notice or hearing or reception of competent evidence, *was inoperative and of no legal force."* (Emphasis added.)

▉ As in the Trans-Oceanic case, it is conceded in this case that the rectory permit was "revoked" without prior notice and without a hearing. Therefore, since the permit was validly issued, the attempted revocation was a violation of due process and "was inoperative and of no legal force." (*Trans-Oceanic Oil Corp.* v. *Santa Barbara, supra.*) Furthermore, the attempted revocation of the permit by the building inspector by means of a letter to the defendants informing them that their permit would "stand revoked, in a suspense file" was a complete nullity. In *New Mission Baptist Church* v. *City of Atlanta,* 200 Ga. 518 [37 S.E.2d 377], on substantially identical facts, the court held : "Nor could such permit be revoked by a mere ex parte declaration of the inspector, as was sought to be done in his letter of July 19, and the attempted revocation being wholly void, the permit remained

of force." It is therefore apparent that the rectory permit has never been revoked and remains in full force.

Nor may the city take comfort from its argument that the building inspector could validly revoke the permit because of an asserted "anticipatory breach" by defendants of the terms and conditions of the permit. The facts constituting proof of an actual breach of conditions or of a clearly stated intention not to comply with the terms of a lawfully issued permit may only be determined upon a proper hearing before a duly constituted body. Until such time as these facts are presented to a proper tribunal of the city and that body has acted upon them, no valid revocation can be accomplished.

The city's argument that its subsequently enacted Zoning Ordinance Number 601 must be applied by this court even though we should find that the rectory permit was invalidly revoked, is without merit. The city contends that even if the permit was invalidly revoked, it could not be ordered reinstated because it would now be in direct violation of the new ordinance. The complete answer to this contention is that the rectory permit was never properly revoked, is still in effect, and need not be reinstated. There is, therefore, no occasion to apply Ordinance Number 601.

In view of our conclusion that the attempted revocation of the rectory permit by the building inspector was invalid and void, we need not consider the question, extensively argued by counsel, as to whether or not defendants had acquired a vested interest in the permit.

The judgment must be affirmed in so far as it orders reinstatement of the rectory permit. Technically, no reinstatement is required since the permit has never been revoked. The effect of the court's order is simply to declare the validity of the permit.

We come next to a consideration of defendants' appeal from the judgment of the trial court denying a writ of mandate directing the issuance of a variance for parking and recreation uses on the variance lot. The defendants' application for a variance was made pursuant to sections 23.31 and 23.32 of the San Marino City Code which provide, *inter alia*: "When practical difficulties, unnecessary hardships, or results inconsistent with the general purposes of this chapter occur through a strict interpretation of the provisions of this chapter, the Planning Commission upon the verified application of any property owner, may in specific cases initiate proceedings for

the granting of a variance under the provisions of this chapter, under such conditions as may be deemed necessary to assure that the spirit and purpose of this chapter will be observed, public safety and welfare secured, and substantial justice done. Before any variance or conditional permit may be granted, there shall be shown to the satisfaction of the Planning Commission that: (a) there are special circumstances attached to the property referred to in the application, or to the intended use of the property, which do not apply generally to other properties or class or uses in the same district and vicinity; (b) the granting of such variance will not result in material damage or prejudice to other property, nor be detrimental to the public welfare or injurious to the persons in the vicinity thereof; (c) all elements taken together indicate that the property under consideration is unique and would otherwise be deprived of privileges enjoyed by other properties in the same district and vicinity.''

Following a full hearing before the planning commission and a hearing de novo before the city council, the council denied the application. In their petition for a writ of mandate, and again on appeal, defendants have urged that they sustained the burden of proof required by the above section of the city code in that: (1) They made a showing of substantial hardship which necessitated the requested uses of the variance lot; (2) they demonstrated ''special circumstances'' attaching to the variance lot which do not apply generally in the neighborhood; (3) there was no substantial showing of any detriment to the neighborhood which would result from the granting of the variance; and, (4) the denial of a variance to defendants was an unreasonable discrimination.

■ The actions of a city in denying or granting a variance may not be successfully attacked in the absence of a clear showing of abuse of discretion. (*Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605, 614, 615 [126 P.2d 954] ; *Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552, 559 [254 P.2d 865].)

■ There is a presumption that all facts necessary to its decision have been found by the administrative board whose proceedings are under review. (*Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 323 [144 P.2d 4].) ■ Moreover, defendants must sustain the burden of establishing the existence of conditions that make the foregoing provisions of the San Marino City Code relating to variances applicable, for ''it is manifest that failure to prove *any* of the matters re-

quired by the ordinance must result in a denial of a variance application.'' (*Minney* v. *City of Azusa*, 164 Cal.App.2d 12, 38 [330 P.2d 255].) (Emphasis added.)

In this connection, the trial court found: ''At the hearing before the Council preceding its denial of petitioner's appeal referred to in Finding XXI, there was presented to said Council sufficient competent, substantial evidence to sustain the findings of the City Council that (1), there were no special circumstances attached to said variance property; (2) there were no special circumstances attached to the intended use of said property, to wit, automobile and bicycle parking and school recreational purposes, which did not and do not apply generally to other properties or classes or uses in the same district and vicinity; (3), the granting of the variance applied for by petitioner would result in material damage and prejudice to other property; (4) the granting of such variance would be detrimental to the public welfare and injurious to the persons in the vicinity thereof, and (5), that the denial of such requested variance will not deprive the variance property of privileges enjoyed by other properties in the same district and vicinity.'' The court further found that: ''The variance lot could at the time of the denial of said variance by the City, and can now, be used for single-family residential purposes.''

 Defendants have not demonstrated any ''unnecessary hardships'' which would require the granting of the variance. The evidence reveals that the defendants purchased the variance lot subsequent to the enactment of the present zoning ordinances and that it was zoned R-1 at the time of purchase. Since then the lot has been consistently used, in violation of the zoning restrictions, for both parking and recreation. No doubt continued use of the variance lot for these purposes would be of great benefit to the defendants, but the fact remains that the lot was purchased with full knowledge of its restrictions, and furthermore, the expansion program undertaken by the defendants was promulgated in the face of those same restrictions. On a site totaling little more than four acres, the defendants propose to construct a rectory and an auditorium, in addition to an existing church building which seats 750 persons, a school building which accommodates 450 students and a nuns' residence. On whatever space remains, defendants intend to park up to 150 cars and provide space for 450 children to play. The difficulty of this proposition is immediately apparent. Thus, while there is no doubt

that some hardship exists, such hardship is the result, not of external circumstances, but of defendants' own expansion program. This is not enough to entitle defendants to relief.

As this court recently pointed out, "Self-induced hardship is not within the purview of the ordinance. Only that type of hardship which inheres in the particular property is recognized,—such as inability to use it for purposes of its existing zoning caused by the prevailing uses of surrounding property. . . . One who purchases property in antici-pation of procuring a variance to enable him to use it for a purpose forbidden at the time of sale cannot complain of hardship ensuing from a denial of the desired variance." (*Minney* v. *City of Azusa, supra,* 164 Cal.App.2d 12, 31, 32.) Thus the "self-induced" hardship complained of by defend-ants does not serve to bring them within the requirements of the city ordinance.

With respect to the claim of defendants that they have demonstrated "special circumstances" within the mean-ing of the zoning ordinance, the record reveals that the only substantial evidence presented by them to the council tended to prove, not that the variance lot was unusable for residential purposes in an objective sense, but rather, that they did not *desire* to use it for such purposes. Furthermore, the record clearly reveals that the variance lot could have been utilized by defendants as a site for their new rectory without the need for a variance. The mere fact that the defendants prefer to build their rectory on C-1 zoned property and use their R-1 property for parking cars and for recreational purposes does not demonstrate a "special circumstance" which requires the city to grant the privilege of a variance.

The next contention of defendants, viz., that there was no sufficient showing before the council that "material damage or prejudice" to other property in the neighborhood would result from the granting of the variance, is fully an-swered by reference to the transcript of the hearing. Several property owners testified that granting a variance would tend to decrease property values in the surrounding R-1 zone. There was evidence that noise, confusion and congestion would result from the use of the lot for recreation and parking. Moreover, the council took an independent "view" of the property and its environs and presumably based its decision in part on what was thus revealed. This was evidence which the council

674

could properly take into account in arriving at its decision. (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879 [264 P.2d 932]; *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471 [197 P.2d 218].) The finding of the trial court on this question is fully supported. It therefore follows that defendants have failed to show, as the ordinance requires, that the granting of the variance would not result in material damage or prejudice to other property in the vicinity.

▮▮▮ In support of their contention that the denial of the variance was unreasonably discriminatory, defendants point out that several variances had been granted by the city to other churches and business establishments in the immediate neighborhood. In their brief, defendants argue: "Defendants respectfully submit that this fact highlights the inequity of the present ruling of the City Council. In weighing whether or not the variance to defendants should be granted, the authorities must afford to defendants at least the same dignity and treatment as to shopping centers and business structures, and the authorities should not be permitted to grant variances to one religious establishment while withholding, in an obviously critical situation, a variance to defendants." ▮▮▮ This same argument was unsuccessfully advanced in *County of San Diego* v. *McClurken,* 37 Cal.2d 683, the court holding at page 691 [234 P.2d 972] : "The fact that variances may have been granted to some owners and denied to others, however, does not establish unreasonable discrimination. ▮▮▮ The granting or denial of variances rests largely in the discretion of the body designated by the zoning ordinance for that purpose, and a denial of a variance will not be disturbed in the absence of a clear showing of abuse of discretion." To the same effect are *Minney* v. *City of Azusa, supra,* page 33; and *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 341 [175 P.2d 542].

In view of the foregoing, it is apparent that the trial court properly refused to grant the petition for a writ of mandate to compel the granting of the variance.

The second action (No. 23660), was filed by city in May, 1957. By its pleading, the city sought an injunction to "abate a public nuisance and to enjoin violations . . . by defendants of Section 23.9 of the San Marino City Code." Since judgment was on the pleadings in this action it is necessary to summarize the essential allegations of the pleadings. The complaint alleged that defendants had caused or allowed violations of

said ordinance by using the same for the parking of automobiles and for organized and supervised recreation and school activities in connection with defendants' school. The ordinance (§ 23.9) is set out in the complaint and it is apparent that the two described uses made by defendants are not included within the purview of the uses permitted by the section. It was further alleged that the cause of action for an injunction is authorized by section 23.53 of the San Marino City Code which provides for suits by the city to abate or enjoin unlawful uses of zoned property. The prayer was for a permanent injunction against further use in violation of the zoning laws.

Defendants' answer alleged: (1) That the city was estopped to enjoin the uses complained of because of the long-continued, open, and notorious use by defendants for these purposes; (2) that the city knew of the uses to which the property was put by defendants; (3) that the city knew that no one was damaged by such use and that no property value depreciation was caused by reason thereof; and (4) that the city knew that defendants had need of the space for the uses complained of because of substantial increases in both the number of parishioners and school children. The first portion of the answer concluded as follows: "That by reason of the said foregoing facts and circumstances and said unrestrained use of the said Parcel 25, (Variance lot) Plaintiff [city] is not entitled to any relief. That any restraint by this court at this time would inflict unnecessary injury to said parishioners and school children and would invade private property beyond reasonable needs." The answer also alleged the pendency of the prior action (24244) and that a petition for a writ of mandate to compel the city to grant the variance was then before the courts in that by stipulation, defendants had the right to appeal from the denial of said writ by the interlocutory order of May 22, 1957. Defendants urge on appeal that said pleading sufficiently raises the defense of a prior action pending. On September 4, 1958, judgment on the pleadings was entered in favor of the city, enjoining defendants from further use of the variance lot as a parking or recreational area. Defendants appeal from this judgment.

■■■■■ There is no question that the uses being made of the lot are in violation of the ordinance and that the city has the right to seek an injunction to enforce the restrictions. The city argues that defendants admitted the cause of action in their answer in that they pleaded facts which showed the vio-

lation. The city further contends that no probative facts were pleaded in the answer which did more than admit the cause of action, and that all other allegations were mere conclusions of the pleader. If no controverted issue appears by the pleadings, motion for judgment on the pleadings should be granted. (*White* v. *Jacobs,* 204 Cal. 334, 336 [267 P. 1087].) If the pleadings admit the cause of action pleaded, motion for judgment on the pleadings should be granted. (*Phillips* v. *Mathews,* 90 Cal.App.2d 161, 164 [202 P.2d 798].)

Defendants urge: (1) that a proper defense of estoppel was clearly pleaded and that estoppel is a question of fact; (2) that equitable defenses were set up by the answer which could only have been determined by a trial on the merits; and (3) that in any event, a prior action (No. 24244) was pending on the same issues and that such prior action was pleaded.

 On the point of estoppel, defendants' answer avers that: the variance lot has been used for parking since 1947; that the city knew of this use; that the city knew no one was damaged by virtue of any depreciation because of this continued use; that the city knew of defendants' need of recreational area for the school and of the increase in the school attendance; and, that the city knew that defendants' property was inadequate in size to meet its requirements unless the variance lot was so used. However, the city asserts that these pleadings show no affirmative duty on its part to act and no reliance by defendants upon any such failure to act.

 The basis of estoppel is that the party against whom the estoppel is asserted, "must have, by his conduct, misled another to his prejudice so that it would be a fraud on the latter to allow the true facts to be proved." (18 Cal.Jur.2d 405.) In this connection, defendants do not contend that the provisions of the city's zoning ordinance concerning suits to enjoin illegal use of zoned property are mandatory in their operation. Thus no affirmative duty on the part of the city to act was pleaded. Moreover, long-continued but illegal use of property, without more, creates no vested rights in the owner as against the zoning provisions. (*Acker* v. *Baldwin,* 18 Cal.2d 341, 346 [115 P.2d 455].) In *Donovan* v. *City of Santa Monica,* 88 Cal.App.2d 386 [199 P.2d 51], an injunction granted to the city of Santa Monica was upheld even though the violations of the city zoning ordinances which were thereby enjoined had continued for 20 years. The opinion quotes 119 American Law Reports, page 1511 as follows: " 'It has been

held that the mere fact that, without more, city officials fail to enforce a zoning ordinance against a violator will not estop the city from subsequently enforcing it against him.' ''

Our Supreme Court recently had occasion to clearly define the rules of equitable estoppel as applied to municipalities. ''There are occasions for departure from the general rule that a city may not be estopped by the conduct of its officers or employees. (Citation.) But such departure is justified only when the facts clearly establish that a grave injustice would be done if an equitable estoppel were not applied. (Citation.) . . . Certain conditions are necessary as the basis for an estoppel: the party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of the facts; the party to be estopped must have intended that its conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party must rely on the conduct to its prejudice. (*Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, 491 [256 P.2d 32].)'' (*California Cigarette Concessions, Inc.* v. *City of Los Angeles*, 53 Cal.2d 865 [3 Cal.Rptr. 675, 350 P.2d 715].)

 Clearly, no showing of a lack of knowledge regarding the applicable restrictions on the use of the variance lot is pleaded in behalf of the defendants. Nor is there an allegation that the city by its acquiescence intended the defendants to rely upon such inaction. It is apparent therefore, that the answer wholly failed to raise the issue of estoppel and that the facts pleaded in an attempt to invoke that doctrine did nothing more than admit the violations sought to be enjoined.

 Defendants' second point is that drastic hardship would flow from a permanent injunction and that the issuance of the injunction would not be ''reasonably related to the public health, safety, morals, or general welfare of said community, in view of all the facts and circumstances alleged.'' Defendants contend that this equitable defense was valid and that no determination could be made upon it as a matter of law on a motion for judgment on the pleadings. Defendants argue that: ''In equity on application for an injunction a balancing of the hardships and a judging on the entire record is required, whether or not estoppel is present.'' This principle is not of universal application. Our courts will ''balance the hardships'' in cases involving encroachments or permanent trespasses to land where a mandatory injunction is

sought. (*Christensen* v. *Tucker*, 114 Cal.App.2d 554, 562 [250 P.2d 660].) The authorities cited by defendants are in harmony with this latter proposition but they do not support defendants' contention that a balancing of the hardships is required in the instant situation. Here, defendants are simply prohibited from further violations of a city zoning ordinance which by their pleadings they have admitted committing. The only "hardships" pleaded in the answer involve the loss of the beneficial use of the variance lot to which defendants have become accustomed. The deprivation of such beneficial uses by the injunction would not, as a matter of law, raise any defenses which required a trial on the merits. Moreover, the rights of a city in the enforcement of its zoning restrictions are substantial and more than mere technical rights. The rule in this regard is stated in *Fairrington* v. *Dyke Water Co.,* 50 Cal.2d 198, 200 [323 P.2d 1001]: "The doctrine of balancing of conveniences is often invoked as a defense in a suit for an injunction where the plaintiff, seeking to vindicate a *technical and unsubstantial right* would impose an unusual hardship upon the public or the defendant. *Deprivation of a substantial benefit, however, falls short of the imposition of substantial hardship.* . . . When a court of equity balances conveniences to determine that an injunction, otherwise warranted, should be withheld, its action approaches an exercise of the right of eminent domain in favor of a private person." (Emphasis added.) It is apparent that, as a matter of law, no defense of hardship was shown and that the trial court was not required to proceed to trial on this issue.

Finally, defendants make the belated argument that the answer to the complaint for injunction pleaded facts in abatement, viz., that in its answer to the cross-complaint of the defendants in the prior action, the city had prayed for "such other, further and different relief, including declaratory relief, *injunction* and respondents' costs, as to the court may seem proper." (Emphasis added.) No motion to abate the action was made below nor does it appear that any argument was made to the trial court on this issue. Moreover, the barest perusal of the pleadings in the former action discloses that no injunctive relief as to the uses of the variance lot was sought by the city nor could the city have been awarded such relief by the trial court. The issues framed by that action, as far as the defendants' cross-complaint and answer thereto is concerned, involved only the questions of

the issuance of a writ of mandate to compel the granting of a variance and a writ of mandate to compel reinstatement of the rectory permit. The answer of the city alleges no facts upon the proof of which an injunction could properly have been issued. "In order that a second action be abated because of the pendency of a prior action, it is elementary that the issues in the two actions must be substantially the same." (*Trickey* v. *City of Long Beach*, 101 Cal.App.2d 871, 881 [226 P.2d 694].) Thus, no prior action was pending between the parties on the issue of the injunction and the trial court did not commit error in this respect when it granted judgment on the pleadings.

The judgment in each action is affirmed.

Ashburn, J., and Kincaid, J., pro tem.,* concurred.

Petitions for a rehearing were denied June 1, 1960, and the following opinion was then rendered:

THE COURT.—In its petition for rehearing, the City attempts for the first time to raise a point not previously argued, viz., that the rectory and wall permits expired 12 months after issuance, because of a provision of the City Building Code. This point, not having been raised or argued in the City's opening or closing briefs or on oral argument, may not be considered on a petition for rehearing. "Counsel are not permitted to argue their cases in a piecemeal fashion and points not previously argued will not be considered where raised for the first time on petition for rehearing (citations)." (*Smith* v. *Crocker First Nat. Bank*, 152 Cal.App.2d 832, 837 [314 P.2d 237]. See also *Blackman* v. *MacCoy*, 169 Cal.App.2d 873, 881 [338 P.2d 234, 339 P.2d 169].) But in any event, the fact that defendants failed to exercise their rights under the rectory permit was due solely to the arbitrary and wrongful action of the City in attempting to revoke the permit. The City may not now take advantage of its own wrong by arguing that defendants did not exercise their rights and therefore lost them. (*Phillips Petroleum Co.* v. *City of Park Ridge*, 16 Ill.App.2d 555 [149 N.E.2d 344].)

*Assigned by Chairman of Judicial Council.

The petitions of plaintiffs and appellants in Civ. No. 24244, and of defendants and appellants in Civ. No. 24244 and Civ. No. 23660, for a. hearing by the Supreme Court were denied June 29, 1960. White, J., was of the opinion that the petitions should be granted.