[Civ. No. 3481. Fourth Dist. Oct. 15, 1947.]

EDWARD D. WHEELER, Appellant, v. CITY OF SANTA ANA, Respondent.

Fred W. Reidman and Forgy, Reinhaus & Forgy for Appellant.

John K. Colwell, City Attorney, and George E. Bradley for Respondent.

GRIFFIN, J.—Plaintiff and appellant brought this action against defendant and respondent for compensation claimed due and prayed for declaratory relief as to his rights in connection with his active employment as a hoseman on the fire department of defendant city.

On August 19, 1940, plaintiff was injured in the course of his employment and on September 25, 1944, the Industrial Accident Commission issued its findings and award, awarding him $19.95 per week for 240 weeks, totaling $4,788, and thereafter a life pension at the rate of $12.29 per week, based upon earnings of $140 per month.

Defendant city paid plaintiff the difference between his regular salary and the amount of compensation he received under the award until May 1, 1945, and on that date it declined to make any further payments.

Plaintiff has performed no services for defendant city since the date of his injury. No pension plan has been adopted by that city covering firemen and policemen under the general pension laws (2 Deering's Cal. Gen. Laws, 1944, Act 5236 or Act 6012.)

Section 764.1 of Act 5233 (2 Deering's Cal. Gen. Laws, 1944, p. 1963, being part of the Municipal Corporation Act governing cities of the fifth class), empowers a city of the fifth class to provide an employees' pension system, but said section goes on to provide the *"Requisites of System,"* among which requisites are the requirements that it shall be on a sound actuarial basis. It provides for contributions by both employees and city, and various other requirements.

At no time were deductions made by defendant city from plaintiff's salary on account of any pension plan, nor did plaintiff make any contribution toward a pension of any kind.

The civil service ordinance of defendant city, covering the police and fire departments, was adopted by the People by initiative in 1937, and was entitled "An Ordinance . . . Creating a Civil Service Board, Providing for the Manner and Method of Appointment: Providing for the Placing of Members of the Police Department, and the Fire Department, Under Civil Service."

Then follow certain provisions in reference to procedure, and in section 8 thereof a "Trial Board" is established and in section 13 it is provided that "No person in the Classified Civil Service shall be removed or discharged from his position or reduced in rank except for *inefficiency, misconduct,* or *insubordination."* There is nothing in the ordinance setting up a pension plan or retirement system for employees. The ordinance provides that the civil service board shall "provide rules and regulations for the keeping of service records of the . . . fire department employees and for the classification of such employees. Such rules and regulations shall have the force and effect of law," and "shall formulate rules and regulations governing the selection and promotion of members of the Fire Department. . . ."

The above-quoted portions of the ordinance contain the only express delegation of powers to the civil service board. That board then adopted rules and regulations, and a "Compensation Plan" for various salaried positions. Rule 5, section 3 (relied upon by plaintiff to support his claim), provides that:

"Whenever an employee receives Workmen's Compensation under authority of the Laws of the State of California, the sick leave with pay allowed to such employee shall begin with the first day he is absent from duty because of injury and continue until the first day for which he is paid compensation from the insurance fund. Deduction shall be made from his accumulated sick leave for the period of time he is paid full salary while absent from duty. *For the duration he receives Workmen's Compensation, he shall be paid the difference between his regular salary and the amount of compensation he receives.* No deduction shall be made from the accumulated sick leave for such payment." (Italics ours.)

It should here be noted that rule 5, section 3, contains other provisions in reference thereto. "LEAVES OF ABSENCE . . . without pay may be granted by the Civil Service Board upon recommendation of the Department Head for a period not to exceed six months. . . ." Then follows:

"The reinstatement of any employee at the end of a leave of absence shall depend upon a physical fitness of the employee evidenced by medical-physical examination and the approval of the Civil Service Board."

"Leaves of absence with pay may only be granted by the Civil Service Board upon recommendation of the Department Head concurred in by the City Council, for attendance in court, or attendance at professional or vocational meetings which relate to the work performed by the employee for the City of Santa Ana."

Then under the title "SICK LEAVE":

"Sick leave with pay may be granted by a Department Head with the concurrence of the City Council and the Civil Service Board for a total length of time not to exceed two weeks for a calendar year. . . . Leave for sickness shall be cumulative and deductible. . . ."

"Any employee who is still absent from duty at the expiration of his accumulated sick leave shall be placed on *leave of absence status* (without pay) until his return to active duty. If an employee is physically unfit to return to his previous employment, as demonstrated by medical examination, at the termination of his absence because of illness, he may be demoted to a suitable position. If there is no position which he is physically able to fill *he may be dismissed* from the service."

It does not appear that plaintiff has ever been dismissed from service under this provision, or under section 13 of the ordinance.

Section 4 of rule VI, under the heading "RESIGNATION," provides: "An employee shall be deemed to have resigned if he orally resigns and thereafter, at the next regular hour of such employment, does not report for work, or if he does not report for work he will be deemed to have resigned, unless he presents a satisfactory excuse . . ." etc.

The court found generally the facts above enumerated and that plaintiff knew of rule 5, section 3, at the time of its adoption; that prior to his injury other firemen who had been temporarily injured, had been paid by the city the difference between their regular salaries and the amount of workmen's compensation benefit received by them during the period of their *temporary* disability; that the city paid plaintiff the difference between his regular salary of $140 per month and the amount of his award, from August 27, 1940, to May 1, 1945 (254 weeks), but that on May 1, 1945, it declined to make further payments.

It then found "That the only power and authority under which rules and regulations of the Civil Service Board were adopted or created, was the power and authority given under and pursuant to the said Civil Service ordinance . . ." which "ordinance does not grant power or authority, express or implied, to the said Civil Service Board to adopt or enact that portion of rule 5, section 3," relied upon by plaintiff and as above italicized. It concluded that that portion of said rule "has been at all times herein mentioned, and now is, in excess of the powers, express or implied, of the said Civil Service Board, and the same was and is therefore *ultra vires* and void," and it denied plaintiff's demand.

On appeal plaintiff argues that he has "never been removed or discharged" from his position as a member of the fire department; that the city is *estopped* to deny that the amount claimed due is a part of his compensation; and that therefore he is entitled to receive the difference between his regular salary and the amount of his permanent award as long as he receives workmen's compensation.

From an examination of the title and text of the ordinance submitted to the voters, it seems clear that the ordinance had reference to and was limited to the creation and establishment of civil service for members of the fire and

police departments. There is nothing therein contained which sets up a pension system with a "sound actuarial basis," or which provides for "contributions of both employee and the city" to such fund, as contemplated under firemen's relief, health and pension plan, under Act 5236, *supra,* or Act 2592 (1 Deering's Cal. Gen. Laws [1944], p. 1081), and which would have any uniform application to all injured employees alike. (*Frisbee* v. *O'Connor,* 119 Cal.App. 601 [7 P.2d 316].)

It is a well-established rule that the jurisdiction of the civil service commission is limited, and it can exercise only the power conferred on it or which is necessarily implied. Its power is limited to the administrative functions conferred, and the rules adopted by the commission have the force of law, when within the power conferred upon it. (*Livingstone* v. *MacGillivray,* 1 Cal.2d 546 [36 P.2d 622]; *Bruce* v. *Civil Service Board,* 6 Cal.App.2d 633 [45 P.2d 419]; *Haub* v. *Tuttle,* 80 Cal.App. 561 [251 P. 925].)

It was said in *Frisbee* v. *O'Connor, supra,* that "If it may be said that there is a 'fair, reasonable and substantial doubt,' concerning the existence of the power, such doubt must be resolved against the existence thereof."

Plaintiff relies on such cases as *Aitken* v. *Roche,* 48 Cal. App. 753 [192 P. 464], where it was held that, where a pension system had been provided for, that the right to a pension was a vested one and entered into the contract of employment. Since the civil service board had no power to establish a pension system, under the authority conferred, no such vested right was conferred upon plaintiff. Any person contracting with a county or municipal corporation is bound to recognize such limitation of power. (*County of Alameda* v. *Ross,* 32 Cal.App.2d 135 [89 P.2d 460].) It does not appear to us that it was the intention of the voters, as expressed in the ordinance adopted, that plaintiff should be allowed full pay for the rest of his lifetime, less a deduction of any amount allowed under the workmen's compensation award, and not render any service to the city during that period. At least the power to confer such right, if it did exist, was not delegated to the civil service commission by the city council.

Under this conclusion it will not be necessary to determine whether plaintiff is not now a member of the fire department, whether he has been placed on *leave of absence status* (with-

out pay) or whether he is, by the provisions of the rule, subject to "dismissal from the service."

As to the question of claimed estoppel, *Haub* v. *Tuttle, supra*, sets forth the rule here applicable, at page 569:

"The fact that said Commission has operated for a number of years under the interpretation appellants are contending for here cannot be held to affect the present legal situation for the reason that the exercise of powers by city officers, in excess of their authority, for a great length of time, will raise no presumption of a grant to the city of such powers." (Citing cases.)

In *Frisbee* v. *O'Connor, supra*, it was held that neither a municipal corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized by its charter or by some legislative act applicable thereto, and that all acts beyond the scope of the powers granted are *void*. (Citing cases.)

The general rule is that estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances, such as when the authority exists to make a contract but the proceedings precedent thereto have been informally taken. In no event will such estoppel operate where the act or contract relied on to create the estoppel is outside the corporate powers of the governmental agencies or officials. (Dillon on Municipal Corporations, 5th ed., vol. II, p. 1178, § 791; McQuillan, Municipal Corporations, revised ed., vol. II, p. 252, § 519; *McCormick Lumber Company* v. *Highland School District*, 26 Cal.App. 641 [147 P. 1183]; *Sacramento County* v. *Southern Pacific Co.*, 127 Cal. 217 [59 P. 568, 825]; *Aebli* v. *Board of Education*, 62 Cal.App.2d 706 [145 P.2d 601].)

Therefore, the fact that the civil service commission erroneously assumed that it had the power to adopt that portion of rule 5, section 3, relied upon by plaintiff, which resulted in the illegal payment of money to persons not entitled thereto, would not operate as an estoppel against the city from discontinuing these payments.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 11, 1947. Schauer, J., voted for a hearing.