[Civ. No. 17230.   First Dist., Div. One.   Apr. 22, 1957.]

CITY AND COUNTY OF SAN FRANCISCO, Respondent, v. SAFEWAY STORES, INC. (a Corporation), Appellant.

Albert F. Skelly for Appellant.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Chief Deputy City Attorney, for Respondent.

BRAY, J.—Plaintiff sued to have defendant's use of a certain traffic easement for ingress to and egress from its property upon which its store is located, by its customers and others, declared a public nuisance and enjoined. Defendant appeals from a judgment in plaintiff's favor.

QUESTIONS PRESENTED

1. Is the use of a traffic easement in a residential zone for purposes of ingress and egress to a parking lot on mercantile store premises by the general public, delivery trucks, etc., a violation of the zoning restrictions?

2. Is such a violation a public nuisance?

FACTS

There is no conflict in the evidence, the facts having been mostly stipulated. The Stonesons prior to and on March 13, 1940, owned a tract of land in San Francisco, bounded by 19th Avenue, Ocean Avenue, Eucalyptus Avenue and a municipal right of way. It was divided into lots. Lots 9 to 16, both inclusive, front on 19th Avenue. On March 13, 1940, they were zoned by a San Francisco ordinance as first residential zone. Lots 8, 17 and 18 constitute the easterly portion of said tract. By said ordinance Lots 17 and 18 were zoned as commercial zone. In 1948 most of Lot 8 was so zoned "with stipulations" limiting it to use for parking only. Defendant maintains its store on Lot 18, with an extension thereof on a portion of Lot 8 which portion was zoned "commercial" for that purpose in 1950. March 15, 1940, the Stonesons recorded a "Declaration of Easement," which after reciting that they were the owners of the above entire tract, described a portion of said tract and then stated: "Now THEREFORE, the undersigned, Henry Stoneson and Ellis L. Stoneson, do hereby create and declare and there is hereby created and there shall hereafter exist a traffic easement upon and over that portion of said property herein lastly described, and which said easement shall be kept open and unobstructed at all times."

Lots 9 to 16, both inclusive, are held in separate owner-ships. Lots 8, 17 and 18 belong to defendant. Prior to May, 1953, the line between the easement and defendant's property was fenced, thus preventing access from the easement to that property. In that month defendant removed a portion of the fence near Eucalyptus Avenue, thereby connecting the parking lot with the traffic easement. While there is an ''exit'' sign at this point, it is ignored as cars go both in and out of the parking lot there. Moreover, some drivers now use the easement as a cutoff, coming off 19th Avenue into Eucalyptus, thence through the easement into the parking lot and on to Ocean Avenue. Defendant's customers desiring to go from the parking lot to Ocean Avenue use the driveway of the residents on the easement in order to make the turn. In so doing they damage property. Trucks and suppliers of service to Safeway frequently use the easement for both ingress and egress. Since defendant's property was opened for parking through the easement, the traffic has increased immensely. The easement is now used as a thoroughfare.

## 1. *Commercial Use.*

Defendant contends that the use of the easement for entry into and exit from the parking area adjoining its store is not an integral or essential part of its commercial operation, and therefore is not a commercial use or a violation of the ordinance. This question has never been directly passed upon in California. The decisions in other jurisdictions are not uniform. Ones supporting the action of the trial court here are *City of Yonkers* v. *Rentways, Inc.* (1952), 304 N.Y. 499 [109 N.E.2d 597]; *Village of Great Neck Estates* v. *Bemak & Lehman* (1928), 248 N.Y. 651 [162 N.E. 562], affirming 128 Misc. 441 [218 N.Y.S. 359]; *Town of Brookline* v. *Co-Ray Realty Co.* (1950), 326 Mass. 206 [93 N.E.2d 581].

In the City of Yonkers case it was held, based upon prior decisions of that state, that the use of a lot in a residential zone for ingress to and egress from an adjoining public garage in a business zone, was a business use and violative of the residential zoning ordinance. ''. . . it can hardly be denied that the day in, day out moving of vehicles across private land from a public street to the shelter of a garage building is part of the business of garaging vehicles.'' (P. 599.)

The Village of Great Neck case involved the same type of question. It was held that the use of the property as a driveway to the public garage was a public use, although there apparently was some use of the driveway for the storage and repair of automobiles. The court stated in 218 N.Y.S. at page 360: "The interesting question involved is as to whether the owner of a garage located entirely outside the village may be restrained from permitting his customers to drive into his garage and out of it, over a driveway connected with a private residence in a zone within the village, which is restricted to residence uses."

In the Town of Brookline case the defendant owned a tract of land partly in the City of Boston and partly in the Town of Brookline. It proposed to construct an apartment house on the Boston portion and to use the Brookline portion as a rear yard and service entrance. The Brookline portion was in a "single residence district." The proposed use was held to be a violation of the single residence zoning ordinance.

Cited as opposing this doctrine is *Borough of Prospect Park* v. *McClaskey* (1943), 151 Pa.Super. 467 [30 A.2d 179], where it was held that the use of a driveway in a commercial zone to take supplies into the yard of a brick manufactory in an industrial zone and to haul bricks out was not such an accessory use to the industry as to violate an ordinance. The reason is expressed as follows (p. 181): "A driveway for the purpose of affording means of passage to trucks is equally advantageous and suitable for commercial as for industrial purposes." It is significant that the court also said: ". . . it is conceivable that the public use of a private driveway lying within a residential district in connection with a public garage located in an adjoining commercial district may so change the character of the driveway as to render its public use prohibitive as 'a commercial use'. . . ."

In *State* ex rel. *Szodomka* v. *Gruber* (1942), 201 La. 1068 [10 So.2d 899], also cited by defendant, it was held that the use of a 100-foot lot and a 75-foot driveway thereto in a residential zone for parking and entrance to a restaurant in an adjoining commercial zone was not a use which could be considered as a part of the restaurant business, and hence was not a violation of the residential zoning ordinance. It is significant, however, that the court stated that the only one complaining was a person residing more than 100 feet away, and that "The fact that the municipal authorities, the city attorney

and other officials who are entrusted with the enforcement of the municipal ordinances, are not complaining or contending that the" use objected to was a violation of the zoning ordinance, confirmed the court's opinion that there was no violation. It then said: "If the municipal authorities should construe the ordinance as forbidding such use . . . the municipality would either stop this use of the property or lift the ban against it." (P. 902.)

In *Faulkner* v. *City of Keene* (1931), 85 N.H. 147 [155 A. 195], cited by defendant, the plaintiffs sought a declaratory judgment holding among other matters that the proposed use of a 25-foot lot in a residential zone adjacent to a proposed filling station in a commercial zone was not a commercial use or a violation of the residential zone ordinance. The case is of no value to us for the reason that as the court points out, no one contended that the use of the lot as an approach to the filling station was a violation of the ordinance. The defendants were contending that the real purpose was to use the lot for servicing cars. The court then held that such was not the intended use.

Another case cited by defendant is *Suddeth* v. *Snyder* (1938), 120 W.Va. 746 [200 S.E. 55], which dealt with the following situation: The plaintiff sought to compel the city of Bluefield to issue to him a permit to construct a filling station and approaches thereto, on his property. The proposed filling station proper was within a zone permitting filling stations. However, the balance of the plaintiff's property upon which he proposed to construct the approaches to the filling station was within the zone prohibiting such stations. The position of the city was that the filling station proper and its approaches thereto were one project. The court held that the ordinance controlling the location of filling stations was based on the theory of protection against fire, and was intended to apply to the station proper, as distinguished from the approaches thereto, and that the right to construct a filling station carries with it the right to such approaches as are reasonably necessary to its use. Such approaches being essential to that use, and not being in conflict with the purposes of the ordinance respecting fire protection, the construction and use thereof cannot be prohibited. The court was careful to point out that there was no contention that the use of the property would constitute a public nuisance, thus indicating that a different decision might have been reached if the use were a public nuisance.

Mercantile stores surrounded by large parking areas are a modern development. ■ The success of such stores depends greatly upon the parking facilities provided. Foot patronage is minimum. Most of the shoppers come in automobiles which must be parked on the store grounds. To hold otherwise would be neither factual nor realistic. Such parking is an essential and integral part of the store's business. A large number of trucks daily visit such stores bringing fresh supplies. Thus the use of property zoned for residence for the vast amount of public ingress and egress necessarily connected with a store of the Safeway type, is a violation of a residential zoning ordinance.

Defendant seems to contend that the use of a traffic easement in connection with its store business and parking facilities cannot be a commercial use, thereby implying that the right to pass over the easement is superior to the right to zone that easement. In effect, defendant is contending that property held in fee may be zoned for a particular use but that a lesser interest, such as an easement, cannot be zoned. The fallacy of this argument is that it is the property itself which is zoned and not any particular interest in it as such. ■ Obviously, if a parcel of land is zoned the particular interest therein of any individual is subject to that zoning.

This is not a case, as defendant seems to consider it, of a question of the rights of the owner of a dominant tenement over the owners of servient tenements. There is no question of defendant's ownership of an interest in the traffic easement, any more than its ownership of the parking and store area. The question here is concerning defendant's right to use its interest in violation of a zoning ordinance.[1] The trial court properly held that defendant had no right to do so.

2. *Public Nuisance.*

■ Plaintiff brought this action and the court made its findings upon the premise that the violation of the ordinance constituted a public nuisance and was injurious to the general public and not only to individuals in their private rights.

---

[1] "A municipality has the power to establish and maintain residential and quasi-residential districts, and to exclude therefrom all nonconforming and conflicting uses. (12 Cal.Jur. 10-Yr.Supp. 147, § 8, and cases there cited.)" (*City of Los Angeles* v. *Gage*, 127 Cal.App.2d 442, 451 [274 P.2d 34].)

"Private agreements imposing restrictions are not to be considered when determining the validity of a zoning ordinance for the reason that such private agreements are immaterial." (*O'Rourke* v. *Teeters*, 63 Cal. App.2d 349, 352 [146 P.2d 983].)

The evidence showed that automobiles patronizing defendant's store, and the trucks supplying it, go in and out over the easement; that trucks servicing the store spill swill on the easement; that trucks, by reason of their size, have blocked traffic; that the traffic on the easement has increased "immensely" in connection with the Safeway store; that accident hazards have been created; that children playing on the property adjoining the easement have been endangered; that the patrons of the store back their cars on and injure private property. Defendant offered no evidence to controvert any of the foregoing, nor to show that the actions of their patrons in this respect were without its knowledge or approval. This evidence plus the fact that by stipulation of the parties, the trial judge visited the scene,[2] amply supports the court's findings to the effect that the use of the easement by defendant injuriously affects the real and personal property and personal enjoyment and health of the residents in the vicinity and neighborhood of said easement and that such commercial use of the easement was a public nuisance.[3]

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

---

[2]See *Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 366 [203 P.2d 37], for effect on finding of a trial judge's visit to scene.

[3]Section 3479, Civil Code, defines a nuisance: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway is a nuisance." A public nuisance is defined in section 3480, Civil Code: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."