[Civ. No. 20773. First Dist., Div. One. Nov. 27, 1963.]

ALFRED KAPPADAHL et al., Plaintiffs and Appellants, v. ALCAN PACIFIC COMPANY et al., Defendants and Respondents.

PHIL H. CALABRESE et al., Plaintiffs and Appellants, v. J. E. GOETZ et al., Defendants and Respondents.

HOWARD LOCKWOOD et al., Plaintiffs and Appellants, v. THE BOARD OF SUPERVISORS OF MONTEREY COUNTY et al., Defendants and Respondents.

(Consolidated Cases.)

628

Popelka, Graham & Hanifin and Geoffrey Van Loucks for Plaintiffs and Appellants.

William H. Stoffers, County Counsel, Roy E. Anderson, Deputy County Counsel, Noland, Hamerly, Etienne & Fulton and Myron E. Etienne, Jr., for Defendants and Respondents.

BRAY, P. J.—In a consolidated appeal in three cases, appellants in each respective case, who were plaintiffs or petitioners therein, appeal from adverse judgments in favor of the respective defendants.

## QUESTIONS PRESENTED.

All three actions arise out of the granting by the Board of Zoning Adjustment of Monterey County, and its affirmance by the board of supervisors of that county, of a variance under the zoning ordinance, permitting Alcan Pacific Company, a corporation,[1] to use a certain strip of property as a driveway to Alcan's rest home.

1. Does the filing of the subdivision map estop Monterey County from granting a variance permitting use of the property for road purposes?

2. Is the variance permit to use the strip as a roadway valid?

3. Validity of use permit.

4. Applicable to Calabrese only - Does an action for mandamus lie to question the issuance of a building permit allegedly in violation of a zoning ordinance?

## RECORD.

Appellants are owners of land within "Descanso Oak Estates" subdivision. Alcan is the owner of a 41-acre tract of land adjoining Descanso Oak on which it intends to construct a rest home to be known as Carmel Hacienda Rest Home.[2] Alcan also owns an easement for road purposes over a strip of land 60 feet wide in Descanso Oak running from the end of Via Mallorca (which is a cul-de-sac) to the nearest boundary of the Carmel Hacienda tract. In December 1959, Alcan applied to the planning commission for a use permit to build a rest home on its property which is contiguous with one of the boundaries of Descanso Oak. At that time Descanso Oak was zoned R1-A-B4 (first class residential), Carmel Hacienda was zoned K-G-B4 (residential-agricultural). The use permit to build the rest home was granted to Alcan upon certain conditions, and by amendment a condition was imposed, namely, that the 60-foot strip in Descanso Oak above mentioned be used for ingress and egress to the proposed rest home in Carmel Hacienda.

---

[1]Hereinafter referred to as "Alcan." The Board of Zoning Adjustment will be referred to as the "zoning board."

[2]This 41-acre tract will hereinafter be referred to as Carmel Hacienda.

On the assumption that this use permit constituted a use permit for Alcan to use the strip in Descanso Oak, which was zoned for first class residential only, an action was brought by one Lane on behalf of himself and the other landowners in Descanso Oak, against the board of supervisors, Alcan, et al., seeking a writ of mandate to require the board of supervisors to set aside the use permit allowing the strip to be used as a private driveway.[3] In that action the court held, in effect, that the use permit granted Alcan related only to the zone established for Carmel Hacienda, allowing the building of a rest home there, and that the reference in the permit to the strip in Descanso Oak did not constitute a use permit to vary from the Descanso Oak zone but was a condition to the rest home permit. The effect of this decision was to require Alcan to apply to the zoning board for a variance from the Descanso Oak zone to permit the strip to be used for a roadway to the rest home.

About the same time that the *Lane* case was filed, one of the cases consolidated on this appeal was also filed. In this case, Kappadahl et al., owners of property in Descanso Oak, sought an injunction and declaratory relief against Alcan et al., to prevent Alcan from using the strip as a roadway under the above mentioned use permit. After the court's ruling in the *Lane* case, as will hereinafter appear, Alcan obtained a variance permit[4] from the zoning board, granting Alcan the right to use the strip as a roadway to Carmel Hacienda. The trial court found that this variance was valid, that Alcan could use the strip as a roadway with a bridge thereon, and that plaintiffs take nothing by their complaint. Plaintiffs appeal.

Before obtaining this variance permit, and on the assumption that the use permit above mentioned allowed it to use the strip as a roadway, Alcan applied to J. E. Goetz and E. M. Carlsen as Building Inspectors of the County of Monterey for a building permit enabling it to construct a bridge on said strip across the Carmel River. The building permit was granted. Thereupon the second suit involved here was filed, in which Calabrese and wife, owners of land in Descanso Oak, on behalf of themselves and all others similarly situated,

---

[3]This action is not one of those consolidated on this appeal.

[4]As pointed out in *Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 623 [213 P.2d 492], a "use permit" and a "variance" are not the same. The granting of a variance involves a "broader power" than does the granting of a use permit.

sought a writ of mandate against Goetz and Carlsen as building inspectors (Alcan was joined) to compel the building inspectors to revoke the building permit. The court gave judgment for the defendants on the theory that the subsequent granting of the variance permit to Alcan validated the use contemplated by the building permit and made the issue moot. Petitioners appeal.

After the granting of the variance permit, the third action here involved was filed. Lockwood, et al., owners of land in Descanso Oak, sought a writ of mandate against the board of supervisors (joining Alcan) to compel it to rescind the variance permit on the ground that the variance permit was invalid because the hearings before the zoning board and the board of supervisors respectively were not conducted in the manner prescribed by law. The court found that the hearings and the variance permit were valid in all respects and denied relief. Petitioners appeal.

### Additional Facts.

Additional to the facts hereinbefore set forth are the following:[5] Originally the area which later became Descanso Oak was zoned K-B4 (agricultural-residential). On October 4, 1955, a subdivision map of "Descanso Oak Estates" was recorded, together with a declaration of establishment of protective restrictions. This provided, inter alia, that the property included in the subdivision should conform to the usages of a K-B4 district. The area which we have referred to as the strip is not designated on the map. (As will hereinafter appear, it was a part of two of the lots shown on the map.) No indication is given on the map that the strip was to be used as a roadway or in any manner other than as permitted in a K-B4 zone.

The area including both Descanso Oak and Carmel Hacienda originally belonged to Ivan Tweedie, Inc. One Haber and wife purchased from Tweedie the area in Carmel Hacienda which they later conveyed to Alcan and upon which the rest home complex was to be built. It was agreed between Tweedie and the Habers that as soon as the map of Descanso Oak was filed, Tweedie would deed to the Habers the strip in question, namely, the westerly 30 feet of lot 9 and the easterly 30 feet of lot 8, to give access to the proposed rest home from Via Mallorca, the cul-de-sac shown on the map.

Following the recording of the map, conveyances to Haber

---

[5]There is no dispute over the facts.

and wife were made of the easterly 30 feet of lot 8 and the westerly 30 feet of lot 9, as said lots are shown on the map. This made the strip in question. The conveyances contained an express reservation of a condition subsequent in favor of the grantor-subdivider to the effect that the strip was to be used for road purposes during the month of September 1975 or theretofore dedicated to the County of Monterey for road purposes. If the land was not so used, grantor was to regain full possession of the strip. Alcan succeeded to the rights of the grantees.

On January 7, 1957, the board of supervisors amended the zoning ordinance, putting the whole of Descanso Oak in a R1-A-B4 zone (first class single family residential 1-acre minimum). At the same time it reclassified Carmel Hacienda from K-B4 (agricultural-residential) to K-G-B4. This reclassification would permit the use of property in this zone for hospitals and rest homes if permit therefor were obtained.

As before stated, Alcan on January 12, 1960, was granted a use permit to construct a rest home on its property in this zone. Condition 3 in said permit stated: "3. That there be a 60 foot width right of way, being a part of the building site and serving only the one building site to the San Carlos Road."

Thereafter, Alcan applied to the planning commission for an amendment to their use permit to provide an alternative condition to the use permit to the effect that Alcan could construct an access road over the strip and a bridge thereon, to give access to Alcan's property in Carmel Hacienda from Via Mallorca in Descanso Oak. Over the protest of the property owners in Descanso Oak the zoning board granted an amendment to the use permit and again over the property owners' protests, the board of supervisors approved the amendment.[6] It was this use permit as amended that the

---

[6]It must be borne in mind that the zoning board and the board of supervisors in the original grant to Alcan of the use permit and in the granting of the amendment were not dealing with an application for a use permit in the zone covering Descanso Oak and in which the strip is located, but with an application for a use permit in the zone applying only to Carmel Hacienda. The amendment is peculiarly worded. It reads in pertinent part: "That said Planning Commission hereby grants said amendment to Use Permit No. 534, thereby establishing the following additional condition: II. That the portions of Lots 8 and 9 of Descanso Oaks Subdivision possessed by Alcan-Pacific Company be used for ingress and egress, and for road purposes in connection with the granted uses. This may be used in addition to the use of San Carlos Road as described in conditions 2 and 3, or may be used as an alternate route instead of San Carlos Road."

court in *Lane, supra,* held did not constitute a permit to use the strip in Descanso Oak for road purposes.

## 1. EFFECT OF MAP.

Appellants contend that when the board of supervisors accepted the Descanso Oak subdivision map with Via Mallorca shown thereon as a cul-de-sac and no showing of an easement or right of way for road purposes over the strip, the county became forever estopped from permitting the use of any of the lots or portions thereof for roadway purposes, which, in effect, would make Via Mallorca a through roadway to the adjoining tract. Other than citing the general principles of estoppel, appellants have cited no authority for their contention. Nor do the general principles of estoppel apply to this situation. The filing of a map showing streets, lots and blocks in no way prevents a county under its zoning power from changing the zoning uses nor from permitting a property owner to use his property for road purposes, provided, of course, he brings himself within the provisions of the applicable zoning ordinance.

Even if the map did not show an easement, right of way or other interest in the land outstanding, it does not follow that the county is estopped or otherwise precluded by such recordation from exercising its zoning or planning functions. Estoppel is only rarely applicable against the government and when applicable is usually against the government in its proprietary or private sphere. (See e.g., *Wheeler* v. *City of Santa Ana* (1947) 81 Cal.App.2d 811 [185 P.2d 373]; *Magruder* v. *City of Redwood City* (1928) 203 Cal. 665 [265 P. 806]; cf. *Price* v. *Schwafel* (1949) 92 Cal.App.2d 77 [206 P.2d 683]; *Donovan* v. *City of Santa Monica* (1948) 88 Cal.App.2d 386 [199 P.2d 51]; see also 44 Cal.L.Rev. 340, 348-349.) The zoning and planning sphere does not derive from the proprietary interests of the county. It is an independent power. (Gov. Code, § 65800 et seq.) To hold that the county could be estopped from performing this function by the filing of a map would be to fly in the face of an express statutory grant. The simple act of filing a map would destroy the power of the planning commission, the zoning board and the local legislative body to *ever* permit the use of land for purposes other than those specified on the map, or as zoned at the time the map was filed. The uses to which a parcel could be put would be irrevocably fixed for all time. (See *Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348, 367 [203 P.2d 37].) There is no indication in the Subdivision

Map Act (Bus. & Prof. Code, § 11500 et seq.) that such a result was intended by the Legislature.

Moreover, insofar as the County of Monterey is concerned, there is no pleading of estoppel. The only purported pleading of estoppel is in *Kappadahl,* to which the county is not a party. It is not pleaded either in *Calabrese,* where the county's building inspectors are parties, or *Lockwood,* in which the board of supervisors is a party.

 As to Alcan, it is claimed that because the Habers, its predecessors in interest, signed consent to the Descanso Oak map, such act would estop the Habers and their successors in interest, Alcan, from ever using the property for other than residential purposes. Such result does not and cannot result from the consent of a property owner to the filing of a residential tract map. Appellants have cited no authority to support this contention. A map does not determine the uses to which the property shown on it may be put. At the time the Habers purchased the strip the area was zoned K-B4 (agricultural-residential) which zone permitted the use of any property therein for private roadway purposes. It was after the Habers obtained ownership of the strip that the area zone was changed to R1-A-B4 (first class residential).

2. VALIDITY OF THE VARIANCE PERMIT.

 Grant of a "variance" from an established zoning ordinance is an administrative or quasi-judicial rather than a legislative act. (*Essick* v. *City of Los Angeles, supra,* 34 Cal. 2d 614; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826 [323 P.2d 71]; 1 Yokley, Zoning Law and Practice, § 129.) The power to grant such a variance is conferred upon a city council or board of supervisors by statute. (Gov. Code, §§ 65853, 65896, *infra.*) Within this framework, powers are granted the local bodies by the zoning ordinances (here, § 31, Zoning Ordinance of Monterey).

Section 65853, Government Code, prescribes the power of a board of zoning adjustment: "The board of zoning adjustment . . . may hear and decide: . . .

"(b) Applications for variances from the terms of the zoning ordinance when the following circumstances are found to apply:

"(1) That any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privilege inconsistent with the limitations upon other properties in the vicinity and zone in which subject property is situate.

"(2) That because of special circumstances applicable to subject property, including size, shape, topography, location or surroundings, the strict application of the zoning ordinance is found to deprive subject property of privileges enjoyed by other properties in the vicinity and under identical zone classification."

Section 65896 provides: ". . . (b) In specific cases [the board of zoning adjustment or the zoning administrator may grant] applications for variances from terms of the ordinance as will not be contrary to its intent or to the public interest, safety, health, and welfare, and where due to special conditions or exceptional characteristics of such property, or its location or surroundings, a literal enforcement of the ordinance would result in practical difficulties or unnecessary hardships."

 It is apparent, therefore, that a board of zoning adjustment must find the above noted facts and conditions to exist before it can exercise its power to grant a variance. (Cf. 1 Yokley, § 130.) If these prerequisites are found, are supported by the probative evidence and the procedure followed in ascertaining those prerequisites is in all respects as prescribed by law, the variance is valid. The fact that by a variance appellants are deprived of a right of referendum is irrelevant by their own admission. There may well be situations where all of the above findings are made but the acts of the legislative body so clearly amount to "zoning" that the court will step in and require that a purported variance be subject to referendum. It is difficult to see in this case, however, any such special circumstances which would warrant a court intervening in the face of the findings above prescribed, as the property in question is too small even to be put to a use consistent with the zoning requirements (which require one acre as a minimum building site).

The issue facing the trial court in the *Lockwood* case, therefore, was the validity of the findings of the zoning board and the board of supervisors when measured by the above standard. In *Ames* v. *City of Pasadena* (1959) 167 Cal.App. 2d 510, the court said at page 516 [334 P.2d 653] : " ... the decision of the municipal body in granting or denying a variance will not be disturbed by the courts in the absence of a clear and convincing showing of an abuse of discretion. [Citation.]

"Finally, it is to be observed as pointed out in *Steiger* v. *Board of Supervisors* (1956) 143 Cal.App.2d 352, 357 [300

P.2d 210], that the granting of the variance and exception did not operate to give the defendant ... any right which was not theretofore vested in her. It merely removed certain restrictions imposed by the zoning ordinance in an R-1 zone. The exception does not restrict plaintiffs or those they purport to represent in the use of their property and they have no vested right in the maintenance of the restrictions.''

In *Flagstad* v. *City of San Mateo* (1957) 156 Cal.App.2d 138, 142 [318 P.2d 825], the court noted that ''Courts must curb carefully the temptation to make policy in the field of zoning variance. The point of view to be satisfied is that of the city council. The courts inquire only whether the decision of the council is arbitrary or capricious, whether it is an abuse of discretion or is without any reasonable justification. Unless so proscribed, the council's determination must stand, regardless of the court's view as to its wisdom.'' (Accord: *Siller* v. *Board of Supervisors* (1962) 58 Cal.2d 479 [25 Cal. Rptr. 73, 375 P.2d 41].)

The trial court found upon the submission of evidence and testimony that the proceedings before the zoning board and the board of supervisors were proper and valid. Appellants do not point out any particular in which the proceedings before the planning commission, the zoning board or the board of supervisors did not conform to the law. The court found that the findings of the board of supervisors were supported by the evidence.[7]

The issue of the validity of the action of the board of supervisors in granting the variance is presented to the appellate court in the form of review of the findings of the trial court sustaining that action. As such, the scope of judicial review by the appellate court is restricted under California law. It is conceded that the test by which the appellate court proceeds is whether there is any substantial evidence to support the lower court's decision, viewing the evidence supporting the finding of the lower court in isolation. (See *Thompson* v. *City of Long Beach* (1953) 41 Cal.2d 235 [259 P.2d 649]; *Riggins* v. *Board of Education* (1956) 144 Cal. App.2d 232, 235 [300 P.2d 848]; *Chenoweth* v. *Office of City Clerk* (1955) 131 Cal.App.2d 498, 501 [280 P.2d 858]; 8 Stan.L.Rev. 563, 571, 580; 44 Cal.L.Rev. 262, 278, 283.)

---

[7]The trial court in *Kappadahl* and *Calabrese* also found that the proceedings granting the variance were in all respects proper, and further held that the variance here in question permitted the contested actions by Alcan.

The trial court reviewed the record of the proceedings before the zoning board and particularly before the board of supervisors, and held that there was substantial evidence to support the action of both boards. We likewise find that there was such substantial evidence.

 The board of supervisors found as facts all of the requisite conditions to grant the variance under the ordinance.[8] These findings appear to comport with the requirements of section 65896, Government Code. Whether or not

---

[8]Section 31, Zoning Ordinance of the County of Monterey, reads in relevant part as follows:

''Where practical difficulties, unnecessary hardships or results inconsistent with the purpose and intent of this Ordinance may result from the strict application of certain provisions thereof, variance may be granted as provided in this section.

''a. .... [Applicant must show]

''(1) That there are exceptional or extraordinary circumstances or conditions applying to the land, building or use referred to in the application, which circumstances or conditions do not apply generally to land, building, and/or uses in the same district, and

''(2) That the granting of the application is necessary for the preservation and enjoyment of substantial property rights of the applicant, and

''(3) That the granting of such application will not, under the circumstances of the particular case, materially affect adversely the health of safety of persons residing or working in the neighborhood of the property of the applicant, and will not, under the circumstances of the particular case, be materially detrimental to the public welfare or injurious to property or improvements in said neighborhood.''

In this case the following evidence was introduced before the zoning board in favor of the grant of the variance as tending to establish the ''exceptional or extraordinary circumstances'':

1) The 60-foot strip is too small for a homesite.

2) Under the deed through which defendant Alcan claims, the only use possible is that of a roadway. Therefore, the grant is necessary for the enjoyment and preservation of substantial property rights.

3) The records show the 60-foot parcel to be an access suitable for a roadway. Thus, Alcan relied on the deeds to those parcels showing the existence of the roadway and bought the land accordingly.

4) That the establishment of the roadway was a requirement of the planning commission at a time when such use was not restricted by the zone restrictions.

The following evidence was also introduced to the same purpose but actually goes to the question of potential detriment or hardship resulting to Carmel Hacienda land:

1) There is no other access to a county road available.

2) Defendant has already invested some $300,000 in the project.

3) Easier for residents of the Carmel Hacienda home to walk to Carmel proper, etc.

4) Safer to provide access to Carmel Valley Road at the point it intersects Via Mallorca.

the circumstances involved in a particular case amount to "hardship" etc. is a question of fact, and rests largely in the discretion of the board. (Cf. *Otis* v. *City of Los Angeles* (1942) 52 Cal.App.2d 605 [126 P.2d 954].)

*City & County of San Francisco* v. *Safeway Stores, Inc.* (1957) 150 Cal.App.2d 327 [310 P.2d 68, 63 A.L.R.2d 1441], does not hold, as intimated by appellants, that the zoning board and board of supervisors have no power to grant in a residential zone a variance for private road purposes. That case dealt solely with the question of whether the use of a traffic easement for purposes of ingress and egress over property in an area zoned for residential purposes to a parking lot on adjoining property zoned for commercial purposes, said easement to be used by the general public, delivery trucks, etc., constituted a violation of the zoning restrictions. In holding that it did, no suggestion was made by this court as to whether a variance for this purpose could or could not be granted. While we there held that the use of the traffic easement in violation of the zoning ordinance constituted a public nuisance, such fact has no application here in that the use of the easement in the Descanso Oak tract is not in violation of the zoning ordinance. It is under a variance legally granted.

Appellants cite no authority for their contention that a variance for road purposes from the restrictions of a zoning ordinance may not be granted.

■ Appellants contend that the granting of the variance constitutes "spot zoning." However, spot zoning does not apply to a variance. As shown in *Rubin* v. *Board of Directors* (1940) 16 Cal.2d 119 [104 P.2d 1041], the variance "procedure has been devised in order to minimize the acknowledged evils of 'spot zoning' by amendment of the zoning ordinance. It provides the opportunity 'for amelioration of unnecessary hardships which, owing to special conditions, would result from literal enforcement of the restrictive features of the ordinance.' (*Thayer* v. *Board of Appeals of City of Hartford*, 114 Conn. 15 [157 A. 273].) Of even more importance is the fact that in granting a variance, municipal authorities may usually attach conditions controlling the excepted use in accordance with the spirit and purposes of the general zoning plan. ... Unlike the 'spot zoning' obtained by amendment of the general zoning ordinance, a variance or exception sanctions a deviation from the standard under the dispensing power vested in the administrative body." (P. 124.)

■ No contention is made as to the sufficiency of the findings themselves to support the action of the zoning board and board of supervisors. As said in *Ames* v. *City of Pasadena, supra,* 167 Cal.App.2d 510, concerning the official bodies there involved, all the zoning board and board of supervisors are required to do as a condition to the granting of the variance is to find the ultimate facts prescribed by the ordinance. This was done. In *Siller* v. *Board of Supervisors, supra,* 58 Cal.2d 479, the court noted that where a variance is granted, existence of the requisite facts is presumed. (See also *Cohn* v. *County Board of Supervisors* (1955) 135 Cal. App.2d 180 [286 P.2d 836].)

The situation as to the strip is unique in that apparently from a time prior to the filing of the Descanso Oak map, Tweedie, the owner of the land shown on that map, and the Habers, the owners of Carmel Hacienda, contemplated that there was to be a private roadway from the proposed Via Mallorca over the Carmel River into the Carmel Hacienda. Apparently it was agreed that the Habers would deed a certain right of way to Tweedie in exchange for the strip easement. This fact was disclosed to the planning commission at the time that commission was asked to approve the map for filing. The commission suggested that a reversionary clause be included in the proposed conveyance to the Habers to the effect that the strip would revert to the property owners if a road was not built on it in 15 years. The Habers agreed to this. The commission then approved the Descanso Oak map on certain conditions, one of which was that the strip be conveyed to the Habers for road purposes subject to the stated reversion. At that time such a use of the strip was proper under the zoning restrictions then in effect. Thus, when the variance from the later zoning restrictions was granted it carried into effect the above mentioned agreement and the intent of the planning commissioners. As said by the board of supervisors when it granted the variance, ''The land referred to in the application is a 60-foot strip of approximately 1/4 acre that was expressly created to be the roadway approach for a bridge across the Carmel River to provide access to a 40-acre parcel of land of applicant situated on the other (south) side of the Carmel River. This 60-foot strip cannot be used for residential purposes called for in an R1AB4 zone, and therefore there are applicable to this 60-foot strip exceptional and extraordinary circumstances that do not apply generally to land, building and/or uses in the same district. 2. (a) The

60-foot strip was purchased by the predecessors in interest of the applicant pursuant to a resolution of the Monterey County Planning Commission that calls for the acquisition of said strip to provide access to the aforesaid 40-acre parcel on the south side of the Carmel River. Since the 60-foot strip cannot be used for residential purposes, and since it was acquired for, and only can be used, for roadway and bridge purposes, the granting of this application for variance is necessary for the preservation and enjoyment of substantial property rights of the applicant in the said 60-foot strip.'' The circumstance that the providing of a roadway on the strip was a condition to the approval of the Descanso Oak map by the then planning commission is one of the ''exceptional or extraordinary circumstances'' required by the ordinance to be shown in an application for a variance. Moreover, it distinguishes the situation here from that in *City of San Marino* v. *Roman Catholic Archbishop* (1960) 180 Cal.App.2d 657, 673 [4 Cal.Rptr. 547], where the court held that '' 'One who purchases property in anticipation of procuring a variance to enable him to use it for a purpose forbidden at the time of sale cannot complain of hardship ensuing from a denial of the desired variance.' '' Here, the Habers obtained the strip (actually it is an easement for road purposes) pursuant to the condition required by the planning commission and at a time when its use for that purpose was not prohibited by the restrictions applicable to the zone as it then was. Although when they transferred the strip to Alcan, the later zoning did restrict such use, Alcan was merely carrying out the condition imposed upon its predecessors and was carrying into effect the requirement of the planning commission. Thus Alcan's was a different situation than that of the ''self-induced'' hardship referred to in *City of San Marino, supra.*

3. VALIDITY OF THE USE PERMIT.

As before stated, both the *Kappadahl* and *Calabrese* actions were commenced prior to the obtaining by Alcan of the variance permit and were brought upon the assumption that the use permit issued to Alcan to build a rest home in Carmel Hacienda gave Alcan the right to use the strip as a roadway. In *Lane, supra,* and in both *Kappadahl* and *Calabrese,* it was held that the rest home use permit did not constitute either a use permit or a variance permit as to the strip, nor did it give Alcan any right to use its property in Descanso Oak in contravention of the restrictions of the zoning ordinance ap-

plicable there. It merely set up a condition to the use of the Carmel Hacienda land as a rest home.

Inasmuch as respondents concede that the determination in *Lane* has become final and that the use permit gave Alcan no rights in Descanso Oak or in the strip, we see no necessity for discussing further the validity of the use permit, a subject to which appellants devote considerable of their brief, other than to consider their contention that the granting of the variance permit was an invalid attempt by the zoning board and the board of supervisors to validate an invalid use permit. As we have pointed out, there was no use permit to be invalid. Thus, when application was made for a variance from the zoning conditions in Descanso Oak there was no invalid act of the zoning board to be validated.

However, assuming, arguendo, that the granting of the use permit had been an illegal act, that fact could in nowise affect the power of the zoning board and the board of supervisors to thereafter perform a valid act as to the same matter.

No reason appears why the power granted to the zoning board and the board of supervisors with respect to variances should be qualified by prior actions taken by the board of supervisors. Either the variance is a valid exercise of the board's power, resting on the requisite jurisdictional determination and supported by sustantial evidence, or it is not. The power to grant a variance is granted by statute. (Gov. Code, §§ 65896, 65853.) If this case had been tried before the variance was granted and decided in favor of plaintiffs, no reason appears why the board of supervisors could not thereafter have granted a variance to defendant Alcan which, if valid in all other respects, would render the prior decision of the court irrelevant.

Variances, exceptions, use permits, conditional use permits and other devices perform different functions, and there is no particular reason why the invalid use of one device should weaken or destroy the valid use of another one. (See *Essick* v. *City of Los Angeles, supra,* 34 Cal.2d 614; *Tustin Heights Assn.* v. *Board of Supervisors* (1959) 170 Cal.App.2d 619 [339 P.2d 914].) Each device is surrounded with its own procedure and subject to its own limitations. Under the Zoning Ordinance of Monterey, a use permit is revocable, conditional, or valid for a term, and can only be granted for the uses specified in the ordinance itself. (Ordinance, § 32.) A "variance," on the other hand, is granted on the basis of "practical difficulties, unnecessary hardships or results inconsistent with the purpose and intent of this Or-

dinance'' rather than on conditions detailed in the ordinance. (Ordinance, § 31; accord: 1 Yokely, *supra,* § 133.)
 A variance, therefore, is a discretionary grant to a far greater degree than is the use permit. (See e.g., *Essick* v. *City of Los Angeles, supra,* 34 Cal.2d 614; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66 [187 P.2d 686].)

The determination of the court in *Kappadahl* and *Lockwood* that the variance permit was validly adopted and valid was correct. Its further determination in *Lockwood* that therefore the question of the validity of the use permit had become moot was also correct. The court's determination in *Calabrese* that the granting to Alcan of the variance permit and of a new building permit pursuant to the amended application for building permit had made the subject matter of this action moot is likewise correct.

### 4. ACTION FOR MANDAMUS PROPER.

 In *Calabrese et al.* v. *Goetz, Carlsen and Alcan* (the action seeking to require them as building inspectors to revoke Alcan's permit to build a bridge on the strip) the demurrers of Goetz and Carlsen to the petition were overruled.[9] The gist of said respondents' contentions is that petitioners do not show damage to themselves and fail to show that some substantial right they possess needs protection. Petitioners in *Calabrese* are the owners of lots in Descanso Oak which front on Via Mallorca. They sue on behalf of themselves and the others in said subdivision similarly situated.

Petitioners allege that the building inspectors, in violation of the zoning ordinance, issued to Alcan a building permit to construct a bridge on the strip; that Alcan did not have any use permit or variance and that the building permit was void. The petition further alleges that the entire area shown on the Descanso Oak map is zoned as first class residential (single family residential) and that the maintenance of a bridge in that zone would be a violation of the zoning ordinance.

Section 37 of the zoning ordinance provides: ''All departments, officials, and public employees of the County of Monterey which are vested with the duty or authority to issue permits or licenses, shall conform to the provisions of this Ordinance, and shall issue no such permits or licenses for uses, buildings, or purposes where the same would be in conflict with the provisions of this Ordinance, and any such

---

[9]Alcan withdrew its demurrer.

permits or licenses, if issued in conflict with the provisions of this Ordinance, shall be null and void.''

From the above it is evident that the building inspectors, ''officials ... vested with the duty or authority to issue permits ...'' have a duty to conform the issuance of those permits to the mandate of the zoning ordinance. There is no discretion involved in the issuance. It is a ministerial duty only. While the petition does not directly allege damage to the petitioners and other persons similarly situated, it is apparent that the operation of a private roadway connecting the cul-de-sac Via Mallorca to the 300 unit rest home complex contemplated by Alcan will greatly increase the traffic along Via Mallorca. Indeed, it is inevitable that commercial vehicles will continually enter and leave the area over the roadway proposed to be constructed by defendant Alcan. ■■■ The rule with respect to right to sue for a writ of mandate is stated in 32 California Jurisprudence 2d section 55, page 238, as follows: ''A private individual may apply for mandamus only when he has some private or particular interest to be subserved, or some particular right to be preserved or protected, independent of that which he holds with the public at large.'' (Accord: *Taliaferro* v. *Wampler* (1954) 127 Cal. App.2d 306, 310 [273 P.2d 829]; *Fritts* v. *Charles* (1904) 145 Cal. 512 [78 P. 1057]; *Marini* v. *Graham* (1885) 67 Cal. 130 [7 P. 442].) However, where the enforcement of the action is to procure enforcement of a public duty, this rule has been modified to permit property owners and others to sue in mandamus, since they have an interest as such in seeing that the public duties are enforced. (32 Cal.Jur.2d § 56, p. 239.)

''The rule is stated thus in 35 American Jurisprudence 73, section 320: '[B]y the preponderance of authority ... where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. ... [P. 76 § 322.] ....' '' (*Board of Social Welfare* v. *County of Los Angeles* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627]; limited on other grounds in *Parker* v. *Bowron* (1953) 40 Cal.2d 344 [254 P.2d 6].)

■■■ Moreover, as said in *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 289 [295 P.2d 113], ''In this state it is thoroughly established that a taxpayer, under certain circumstances, has the right to sue in a representative capacity.

[Citations.] A taxpayer may sue in cases involving ... a failure on the part of the governmental body to perform a duty specifically enjoined.'' (See also *Wine* v. *Council of City of Los Angeles* (1960) 177 Cal.App.2d 157, 164 [2 Cal. Rptr. 94].) In *Hollman* v. *Warren* (1948) 32 Cal.2d 351 [196 P.2d 562], the rule was applied in favor of a taxpayer who was granted a writ of mandamus compelling the Governor to exercise his discretion with reference to the appointment of notaries public in San Francisco. It is alleged in the petition, and for the purpose of determining petitioners' capacity to sue we must accept the allegations as true, that respondents issued the building and bridge permit in violation of the zoning ordinance and that Alcan had neither a use permit nor variance.[10]

In *Tustin Heights Assn.* v. *Board of Supervisors, supra*, 170 Cal.App.2d 619 (hearing denied) the court stated at pages 636-637: ''The petitioners are the owners of real property within the zoned area and as such they are restricted in the use of their property by the zoning ordinance. Each of such property owners has an interest in the enforcement of the ordinance which is peculiar to him. If the ordinance is violated, he suffers special damage that is distinguishable from that suffered by the public at large. ... In our case, petitioners allege that the law has been violated and they seek to have the board of supervisors comply with the ordinance which the county enacted. An owner of property within a zoned district is restricted in the use and occupation of his property by law. If he were to be prevented from going to court to seek redress for an alleged violation of that same statute by the board of supervisors or any public official, certainly there would be a denial of equal protection of the law. The private citizen would be subject to the burdens and obligations of the statute, yet denied the right to protect the integrity and character of his property by the same ordinance.''

That case involved a proceeding in mandamus to compel the county board of supervisors to set aside an order granting a conditional use permit for the establishment of a church in a zoned district. The respondents demurred and the demurrer was sustained without leave to amend. The respondents on appeal asserted that the petitioners had no special interest which would enable them to bring the action. The appellate court reversed the trial court's ruling.

---

[10]These allegations were found at the trial to be untrue.

■ Section 37 (c) of the zoning ordinance provides that any use of land contrary to the zoning ordinance is a public nuisance. It does not follow, however, that making an impermissible use of the land a nuisance deprives a landowner of his right to show that as a member of a class his interests are especially threatened. If it were otherwise, an ordinance which so provided would deprive all interested persons of their private rights of action. It is consistent with the framework of the ordinance that the declaration of nuisance was to enable public officials to enforce the ordinance and to abate violations thereof as nuisances. Any deprivation of an interested party's rights to vindicate an alleged wrong should not be implied where not plainly required.

In 35 American Law Reports 2d 1136, the following language appears: ''In the enforcement of zoning regulations, mandamus has most often been employed, since such regulations, affecting as they do the public interest and requiring for their enforcement the affirmative action of public officers, call into effect most of the natural potentialities of the writ. From the cases it would appear that mandamus, in the absence of statutory or other adequate legal or equitable remedy, and where there is neither equitable nor public interest to the contrary, may be invoked to compel proper enforcement by municipal officials of a zoning regulation whose violation by some third party adversely affects a clear legal right of the petitioner.''

■ It is apparent, therefore, that once a sufficient showing of particular interest on the part of the plaintiff has been shown and the duty, clear and present, on the part of the official has been established, no reason presents itself why mandamus is not a proper remedy to attack a ministerial act of an official in violation of the local zoning ordinance.

■ In this petition, although appellants do not allege how and in what respect they or other property owners are damaged, it is clear that the injury with which they are concerned is devaluation of their property and loss of an important part of the character of the neighborhood, and that there is a community of interest among the owners of lots which front on Via Mallorca and that the class is, therefore, definite and ascertainable. In any event, appellants have a right to sue on behalf of owners of lots fronting on Via Mallorca.

The judgments are affirmed.

Sullivan, J., and Molinari, J., concurred.