[Civ. No. 64269. Second Dist., Div. Two. May 31, 1985.]

ROBERT McMULLAN et al., Plaintiffs and Respondents, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant;
ELAINE GEALER et al., Real Parties in Interest and Respondents.

**COUNSEL**

Michael Heumann and Joel Martin Levy for Defendant and Appellant.

Meller & Snyder and William C. Snyder for Plaintiffs and Respondents.

No appearance for Real Parties in Interest and Respondents.

**OPINION**

**ROTH, P. J.**—Respondents sought to convert to condominiums four apartment units owned by them in the City of Santa Monica and to this end on

July 17, 1978, received approval by the city council of that city of their tentative subdivision map, pursuant to the Subdivision Map Act. (Gov. Code, § 66410 et seq.) Final approval of the map was granted April 24, 1979.

Between these dates, and on April 10, 1979, the people of Santa Monica, by initiative, amended their city charter to provide for a comprehensive scheme of rent control of residential rental units. In aid of the scheme, section 1803(t) of the amended charter provided that such units could be *removed* from the rental housing market, by demolition, conversion or other means, only upon the granting under specified standards by a newly created rent control board (Board) of a "removal permit."

On June 26, 1980, respondents filed with the Board their claim for vested rights, wherein they urged that under the circumstances described they were not subject to the requirements of section 1803(t). Following hearing, that claim was denied.

Respondents then filed their petition for writ of mandate to vacate the denial and to declare them exempt from the section. No application for the permit was ever made. The petition was granted and this appeal followed. For the reasons hereinafter set out, we reverse.

 In support of their petition, without challenging the denial of their claim on the merits, respondents urged the Subdivision Map Act preempted the field encompassing the purported application of section 1803(t) and that that section was in any event unconstitutional. The trial court, in its minute order on the question, on the other hand, opined that: "The Court feels itself bound under the doctrine of *Stare Decisive* [sic] by the decision of the Court of Appeal in *El Patio v Permanent Rent Control Board*, 110 Cal App 3rd 915, which in effect held that once a tentative subdivision map has been conditionally approved prior to April 10, 1979, the City cannot apply the Santa Monica Rent Control amendment to defeat petitioner's rights to the final subdivision map and conversion of petitioner's property to condominiums."

As will be seen, neither of respondents' contentions was sufficient to justify the relief they sought nor did the decision in *El Patio* support the trial court's ruling.

 To the extent it may validly be claimed the Subdivision Map Act preempts the field of subdivision regulation (see *Kelber* v. *City of Upland* (1957) 155 Cal.App.2d 631, 636-637 [318 P.2d 561]), it is yet the case it does not operate to defeat the legitimate exercise of the police power of a

municipality in connection with matters outside the scope of the act and which are not calculated to circumvent its express provisions. Stated another way, while the act may be the final word respecting the subdivision process, it does not purport and may not be understood to be preemptive of all land use regulation.

So, it is clear, the ability of a city to enact zoning ordinances or to set standards by way of required building permits is not precluded by the act, even when those ordinances or standards originate after final subdivision map approval and serve ultimately to deny what that approval partially granted. (See *Kappadahl* v. *Alcan Pacific Co.* (1963) 222 Cal.App.2d 626 [35 Cal.Rptr. 354]; *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546]; see also *Hazon-Iny Development, Inc.* v. *City of Santa Monica* (1982) 128 Cal.App.3d 1 [179 Cal.Rptr. 860].) The same is true respecting regulation of land use by means of rent controls, which, properly articulated, constitute a recognized subject for application of local police power, (see *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 868 [201 Cal.Rptr. 593, 679 P.2d 27]; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001]; see also *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]), even if, in implementing those controls, restrictions are placed on the ability of an owner to convey his property. (See *Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95 [222 P.2d 439].)

 It thus being the case there was no impediment to appellant's requiring respondents to obtain the permit in question or to demonstrate why they had a vested interest sufficient to obviate the requirement (see *Santa Monica Pines Ltd.* v. *Rent Control Board, supra,* 35 Cal.3d 858, 866), the making of the order granting writ herein was error.

*El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276] is not to the contrary. While *El Patio* involved facts otherwise similar to those before us, there was present in that case the crucial distinction that the Board chose to rely upon its ability to impose its removal permit requirement as a condition to approval of a final subdivision map, when it had not been a condition to an already approved tentative map. That reliance proved to be misplaced in view of the earlier decision in *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556], to the effect that approval of a final map is "a ministerial act once the appropriate officials certify that it is in substantial compliance with the previously approved tentative map." (*Id.*, at p. 656.) Confining its decision to what was a necessary result based on the limited contention of

the Board, the court in *El Patio* determined that: "[O]ur conclusion is extremely narrow in scope. We hold only that the City could not impose additional conditions after the conditional approval of the tentative map. Nothing herein should be construed as a determination that the approval of a tentative map would allow a property owner to proceed without obtaining other permits which the City might impose if it were not relying upon the Subdivision Map Act. (See *Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57 . . . .)" (*Id.,* 110 Cal.App.3d at p. 927; see also *Hazon-Iny Development, Inc.* v. *City of Santa Monica, supra,* 128 Cal.App.3d 1.) Accordingly, *El Patio* neither compelled the trial court's ruling herein nor did it provide authority supporting issuance of a writ under the circumstances present.

Owing to the recent decision in *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], the same is true respecting respondents' further contention section 1803(t) is unconstitutional.

The order appealed from is reversed.

Compton, J., and Beach, J., concurred.