[No. 37254. Department One. December 3, 1964.]

ALTO L. PATTON, *Appellant,* v. BURTON J. WHEELON *et al.,* *Respondents.**

*Reported in 396 P. (2d) 985.

*Philip L. Burton,* for appellant.

*A. L. Newbould* and *Jerry F. King,* for respondents.

HALE, J.—Alto L. Patton, plaintiff, demands that the Seattle Civil Service Commission conduct an investigation into the conduct of certain police officers. The commission refuses. Must it comply?

By affidavit and sworn application for a writ of mandamus, plaintiff relates that, on February 1, 1963, several policemen forced open a window in her house to remove her minor children therefrom, used unreasonable and unlawful force in taking her children into custody, and that, during her absence, two unidentified police officers, acting without lawful authority from any court, but pretending to possess a valid search warrant, made an illegal entry and search of her home. She says she has been unsuccessful in attempting to identify these latter officers.

Through counsel, plaintiff called her complaints to the attention of the mayor, who directed that the chief of police investigate them and report. Frank C. Ramon, Seattle Police Chief, conducted an investigation of the alleged misconduct by his officers and reported to the mayor that he found no misconduct as charged; he absolved them of any allegations made by plaintiff and recommended that no disciplinary action be taken. Copies of Chief Ramon's report to the mayor and summaries of reports made by the officers involved in the chief's investigation were forwarded to the plaintiff's counsel by the mayor.

Plaintiff also filed with the civil service commission a demand that it investigate the same charges set forth in her complaint lodged to the mayor. From refusal to conduct such an inquiry, the plaintiff brought this application for a writ of mandamus to compel the investigation, and seeks a declaratory judgment confirming the civil service commission's powers and duty to do so under the Seattle

charter, Art. 16. She brings this appeal from a judgment denying the mandamus and the declaratory judgment.

We note the issues raised by this appeal to be narrower and more precise than the issues resolved by the judgment. Our province is not to ascertain the circumstances and conditions under which the Seattle Civil Service Commission *may* investigate the conduct of Seattle police officers but rather to decide whether the commission is compelled to do so on the demand of plaintiff who claims no membership, interest, participation in or identity with the classified civil service of Seattle other than as a resident of the city.

Article 16 of the Seattle city charter creates the classified civil service for that city and, in § 4, empowers the civil service commission to make and apply rules by which the system would be sustained, upheld and enforced. Section 12 vests broad investigative powers and duties in the commission to insure tenure in employment. Section 14 imposes upon the commission a duty to investigate the administration of the civil service article, and it is upon this section that appellant most strongly relies.

Acting under the rule-making power conferred by Art. 16, § 4, the commission has, in rule 11, enumerated grounds for which employees under the classified civil service may be dismissed. Grounds for dismissal include such derelictions as fraudulent misrepresentation in obtaining the employment; violations of reasonable regulations or orders of superior officers; incompetency; inefficiency; wantonly offensive conduct or language to the public or other employees; brutality or cruelty toward persons in custody; and, in general, conduct unbecoming an employee of the city. But the enactment of these rules does not put the commission in charge of the departments of city government or make of it a supervisory agency. The charter fixes responsibility for the operation, control and supervision of the Seattle police department directly upon the chief of police and ultimately upon the mayor in Art. 6, § 4, which reads:

"The chief of police shall manage the police department, and shall prescribe rules and regulations, consistent with

law, for its government and control; provided, that the chief of police shall be responsible to the mayor for the administration of the police department and the enforcement of law."

Had the people of Seattle intended to vest supervisory powers over the Seattle police department and the conduct of its personnel in the civil service commission, slight changes in the language of the charter or the mere addition of a few words would have made the purpose clear.

In the early days of civil service, this court made a distinction between the powers to investigate and the power of removal, but did not touch upon the *duty* to investigate. *Easson v. Seattle,* 32 Wash. 405, 73 Pac. 496 (1903). In that case, complaints made to the chief of police concerning the conduct of an employee in the department produced the same results as in the instant case. Following investigation, the chief of police found the complaint groundless and refused to dismiss the employee. Whereupon, the civil service commission initiated an investigation into the charges and ordered the employee dismissed. In a suit by the discharged employee for reinstatement and to recover back wages, we held that the commission was without power of dismissal under the Seattle charter. The case went no further; it neither delimited the powers nor declared any duty with respect to the investigative authority of the commission, and, hence, is of little help in resolving the problems before us.

We look then to the purposes sought to be accomplished and the ends sought to be achieved by Art. 16 of the Seattle charter.

Article 16, § 12, provides for tenure as follows:

"Every officer or employee in the classified civil service shall hold office until removed or retired. Any officer or employee whose appointment is complete may be removed by the appointing power only upon the filing with the commission of a statement in writing of the reasons therefor. Any officer or employee so removed may within ten days after his removal demand an investigation. The commission shall forthwith make such investigation and its finding

and decision shall be certified to the appointing officer, and if the removal is not sustained thereby, the officer or employee so removed shall at once be re-instated. . . ."

Section 14, the part of the charter particularly involved by appellant here, reads:

"The commission *shall investigate the administration of this article and of its rules and the action of the examiners herein provided for, and the conduct and action of the appointees in the classified service,* and may inquire as to the nature, tenure, and compensation of all offices and places in the public service. In the course of such investigations each commissioner or the commission's designated agents shall have the power to administer oaths, and the commission shall have the power to require the attendance and testimony of any city officer or employee or other person, and the production of books and papers relevant to such investigation." (Italics ours.)

Accordingly, Art. 16 of the charter, relating to the civil service system of Seattle, should be interpreted in context with the provision of the charter which places responsibility for the official conduct of police officers in the chief of police and the mayor. When read in this context, the charter does not make the commission a supervisory or reviewing agency unless the actions under investigation or scrutiny affect the administration of the civil service system.

Article 16, § 14, in providing that

"The commission shall investigate the administration of this article and of its rules and the action of the examiners herein provided for, and the conduct and action of the appointees in the classified service, . . ."

confers the power and duty to investigate not the general conduct of the several municipal departments of government but the particular conduct of the civil service system in all its aspects.

We conclude then that this provision, considered in context with the whole charter, empowers the commission to investigate the selection, appointment, tenure, discharge and retirement of all persons seeking membership in or covered into the classified civil service. It embraces the

power and duty to investigate such matters as fairness and honesty in the conduct of examinations, promotions, and tenure of employment, and to look into accusations of favoritism, dishonesty, and unlawful and unfair discriminatory practices in the administration of the classified civil service. In short, the charter vests in the commission power and duty to investigate any violations of the charter, city ordinances, and the commission's rules and regulations directly pertaining to the administration of the classified civil service system. That in the course of its investigation the commission may incidentally encounter or look into the misconduct, misbehavior or incompetence of city employees or officials neither enlarges nor limits its powers and duties. The civil service commission is and remains a quasi-judicial organ of municipal government created to adjudicate controversies arising under and out of the classified civil service system.

Appellant, claiming no rights or privileges arising under or out of the classified civil service, placed no claim or controversy before the commission which it was under any duty to investigate.

The judgment of the trial court is affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.

January 28, 1965. Petition for rehearing denied.