CITY OF KNOXVILLE, Plaintiff-Appellant,

v.

CIVIL SERVICE MERIT BOARD OF the CITY OF KNOXVILLE, Dr. Robert R. Madigan, Dr. Robert H. Harvey, Ms. Erma Greenwood, Ms. Lindsay McDonough and Mr. John Ruggles, members, and Preston Phelps, Executive Secretary of the Civil Service Merit Board, Robert Viles, Charles Buddy Harrell, George Gibbs and Leo Moore, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

Dec. 6, 1985.

Permission to Appeal Denied by Supreme Court Feb. 24, 1986.

---

Sharon E. Boyce, Asst. City Atty., Knoxville, for plaintiff-appellant.

Randall E. Nichols, Knoxville, for Civil Service Merit Bd. of City of Knoxville, its members and executive secretary, defendants-appellees.

Timothy A. Priest, Pryor Flynn & Priest, Knoxville, for Roger Viles, Charles Buddy Harrell, George Gibbs and Leo Moore, defendants-appellees.

## OPINION

FRANKS, Judge.

Plaintiff's suit to enjoin the Civil Service Merit Board of the City of Knoxville and its hearing examiner from conducting a hearing of alleged grievances by employees of the Service Department was dismissed by the chancellor.

Plaintiff, on appeal, insists the Civil Service Merit Board has no jurisdiction to entertain the employees' alleged grievances.

The undisputed facts are Knoxville's Director of Public Service called in 40 to 50 city employees to perform snow removal on January 20th, a Sunday, and 21st, a holiday, 1985. These employees also worked through Thursday of that week; other employees, including those filing grievances, were told not to report to work Tuesday through Thursday because of the unavailability of work. These employees were re-quired to take either annual leave days or leave without pay. On Monday, January 28, 1985, due to another heavy snowfall, a limited number of employees were needed to operate snow removal equipment.

Under the City of Knoxville's grievance procedure, the employees initially consulted with their immediate supervisor and thereafter with the director of public service. The grievances then proceeded to the third step. At this stage, it must be determined whether the grievance is a personnel matter, which would be heard by the director of personnel with appeal to the mayor or, if it is a civil service matter, it is heard by a civil service hearing examiner.

Upon receiving the grievances, the executive secretary of the Civil Service Merit Board determined the grievances were within the board's jurisdiction and appointed a hearing examiner who scheduled hearings.

The chancellor concluded the Civil Service Merit Board had jurisdiction to hear the grievances under Section 1003(F)(6) and (8) of the City of Knoxville Charter, which provide that the board shall have power:

(6) To hear or designate a hearing examiner to hear appeals submitted by any employee in a classified position relative to any personnel action adverse to such employee, including, but not limited to, suspension, demotion, discharge, or any disciplinary action, and to receive and determine facts concerning the personnel action....

.    .    .    .    .

(8) To hear allegations of any persons on matters of discrimination in hiring, transfer or promotion, neglect of duty, or other violations of merit system principles as established by the Charter.

First, the city contends Section 1008[1] vests jurisdiction over "employee relations,

---

1. 1008. *Personnel Administration.*

Personnel programs, policies and procedures of the City of Knoxville shall be administered consistent with state and federal law and the Charter and ordinances of the city, and shall include but not [be] limited to: The efficient use of human resources in the city government; salaries, wages and benefits; position authorization and control; performance evaluation; records keeping; training and career

employee complaints, and employee working conditions" in the city administration. Second, the city argues that the chancellor misconstrued Section 1003(F)(6). It is argued that "including, but not limited to," indicates the Civil Service Merit Board only has jurisdiction over personnel grievances of the "same nature or kind" as the specific categories listed, *viz.*, "suspension, demotion, discharge, or any disciplinary action...." Since the grievances filed by the employees are not of the same character as the specific categories, plaintiff argues the board has no jurisdiction over the grievances.

The jurisdiction of civil service commissions is limited to the power conferred by statute or charter. *Wheeler v. City of Santa Ana*, 81 Cal.App.2d 811, 185 P.2d 373 (1947). However, civil service commissions possess the power "as may be necessarily and reasonably inferred for the purpose of enabling [them] faithfully and fairly to carry out the work committed to [them]." 62 C.J.S., *Municipal Corporations*, § 690. Section 1003(F)(6), relied upon by the chancellor, gives the board jurisdiction over "any personnel action" adverse to an employee covered by the civil service system. The language "including, but not limited to," followed by the specific categories should not be interpreted as limitation upon, but as an explanation of the general language by way of example. In construing this phrase, the Supreme Court commented: "[t]he inclusion of the phrase 'but not limited to' indicates that the statutory listing is not exclusive. Clearly the statute encompasses ... instrumentalities other than those listed...." *City of Lenoir City v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn.1978). The purpose of listing specific categories after the phrase "but not limited to", the court noted, is merely "to give the general focus of the legislation."

The grievances filed by the city employees claim, in essence, that the Knoxville Public Works Department allowed some full-time employees to work while not according the same treatment to others. One grievance alleges that some of the employees allowed to work on the days in question were also allowed to work overtime. Others alleged it had always been the city's policy to allow employees to work in other areas, such as salting and sanding streets, when snow removal work was unavailable.

■ Under the language of Section 1003(F)(6), we cannot say that the chancellor erred in finding that the grievances constituted "personnel action(s) adverse" to employees covered by the civil service. As a New Jersey court has noted, "[t]he merit and fitness principle necessarily engenders a responsibility to ascertain whether the appointing authority acted improperly or exercised discretion arbitrarily." *City of Hackensack v. Winner*, 82 N.J. 1, 410 A.2d 1146, 1154 (1980). In *Patton v. Wheelon*, 65 Wash.2d 320, 396 P.2d 985 (1965), cited by plaintiff, the court observed a civil service commission is empowered "to look into accusations of favoritism...." *Id.* 396 P.2d at 988. The grievances filed by the employees may plausibly be read as raising accusations of favoritism or arbitrary discrimination among similarly situated employees. Accordingly, these allegations are not outside the jurisdictional coverage of Section 1003(F)(6), which contemplates the board shall have the power to hear any personnel action adverse to an employee.

Another subsection of the charter, Section 1003, confers broad powers on the board with respect to employee grievances. Section 1003(F)(10) empowers the board "[t]o take all further and necessary action as it may determine to preserve and protect the civil service merit system and to enforce its rules, regulations and procedures."

■ Whether there has, in fact, been a violation of the civil service regulations or

development; residence requirements; employee relations; employee complaints; and employee working conditions, including working hours, attendance, holidays, leaves of

absence and vacations. Personnel policies and procedures shall be made available to all city employees.

principles is for the board to determine at a hearing. Before a court of equity will restrain public officers from acting, it must be made to "clearly appear" that the official has no authority to act. *Barnes v. Ingram*, 217 Tenn. 363, 397 S.W.2d 821 (1965).

Under this standard, it does not "clearly appear" that the Civil Service Merit Board is without jurisdiction to hear the grievances.

For the foregoing reasons, the judgment of the chancellor is affirmed and the cause remanded at appellant's cost.

PARROTT, P.J., and GODDARD, J., concur.